**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Mark DUDECK;  Gregory Mirelez,**
**Defendants–Appellants.**

**No. 99–5181, 99–5182.**

United States Court of Appeals,
Sixth Circuit.

Jan. 10, 2001.

Before MOORE and CLAY, Circuit Judges; and RICE,* District Judge.

## OPINION

MOORE, Circuit Judge.

Defendants-appellants Mark Dudeck and Gregory Mirelez, who each pleaded guilty to one count of conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846, appeal the district court's judgments imposing sentence. Each defendant raises one claim. Dudeck argues that the district court clearly erred in increasing his base offense level for possession of a firearm during a drug trafficking offense pursuant to § 2D1.1 of the Sen-

* The Honorable Walter H. Rice, Chief United States District Judge for the Southern District of Ohio, sitting by designation.

tencing Guidelines. Mirelez argues that the district court improperly failed to give him a two-level reduction for acceptance of responsibility pursuant to § 3E1.1 of the Guidelines. For the reasons set forth below, we AFFIRM the district court's judgments regarding both defendants.

## I. BACKGROUND

On April 14, 1998, a grand jury returned a one-count indictment charging defendants-appellants Mark Dudeck and Gregory Mirelez, along with twenty-three other individuals, with conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. On April 22, 1998, the grand jury returned a sixty-nine count superseding indictment. This indictment charged Mirelez with eight money laundering counts in violation of 18 U.S.C. § 1956, in addition to the drug conspiracy charge.

The investigation leading to the indictment began in 1997 when agents with the Drug Enforcement Agency and the Seventeenth Judicial Drug Task Force received information that an individual named Roberto Guerrero was a major distributor of marijuana in Bedford County, Tennessee. The investigation revealed that Guerrero's distribution organization, which was formed in early 1995, consisted of three suppliers in Florida and Illinois, several couriers, and several distributors.

According to the Presentence Investigation Report ("PSR"), defendant Dudeck was a courier in the organization. He, along with his brother David Dudeck, allowed Guerrero to store marijuana on the property where they were living in Bedford County, at 126 Chunn Lane. Additionally, Mark Dudeck sometimes sold marijuana from his residence. Defendant Mirelez, who is the brother of Guerrero, also served as a courier in the organization. Mirelez occasionally delivered loads of marijuana to Guerrero in Shelbyville,

Tennessee. Additionally, the investigation revealed that Mirelez received wire transfers from Guerrero as drug payments, and that Mirelez wired money to Florida at Guerrero's direction as payment for marijuana that had been fronted to Guerrero.

Both Dudeck and Mirelez pleaded guilty to count one of the indictment. Although the written plea agreement required Mirelez to plead guilty to counts one, two, and seven, the district court refused to accept Mirelez's plea to the latter two counts, finding that there was not a sufficient factual basis. The district court sentenced both defendants on January 8, 1999. Dudeck was sentenced to 40 months of imprisonment and three years of supervised release; Mirelez received a sentence of 115 months of imprisonment followed by four years of supervised release. The facts pertinent to each defendant's claim will be set forth in the analysis.

## II. ANALYSIS

### A. Mark Dudeck

■ Section 2D1.1(b)(1) of the Sentencing Guidelines Manual provides a two level increase to the base offense level for a person convicted of certain drug trafficking offenses "[i]f a dangerous weapon (including a firearm) was possessed" during the offense. U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 2D1.1(b)(1) (1998). Application note three explains:

> The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. For example, the enhancement would not be applied if the defendant, arrested at his residence,

had an unloaded hunting rifle in the closet.

U.S.S.G. § 2D1.1(b)(1), cmt. n. 3. A district court's finding that a defendant possessed a firearm during a drug crime for purposes of § 2D1.1 is a factual finding that this court reviews for clear error. *United States v. Williams*, 176 F.3d 301, 307 (6th Cir.1999).

▪▪▪ In order for the § 2D1.1 enhancement to apply, "the government must establish that (1) the defendant actually or constructively 'possessed' the weapon, and (2) such possession was during the commission of the offense." *United States v. Hill*, 79 F.3d 1477, 1485 (6th Cir.) (citing *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir.1991)), *cert. denied*, 519 U.S. 858, 117 S.Ct. 158, 136 L.Ed.2d 102 (1996). This court has explained that constructive possession means "ownership, or dominion or control over the item itself, or dominion over the premises where the item is located." *Sanchez*, 928 F.2d at 1460 (internal quotation marks omitted). After the government establishes that a defendant was in possession of a weapon during the offense, a presumption arises that such possession was connected to the offense. *See id.* The government need not produce any further evidence connecting the weapon and the offense for purposes of § 2D1.1. The burden then shifts to the defendant to demonstrate that " 'it is clearly improbable that the weapon was connected to the offense,' in which case the enhancement would not be applicable." *Id.* (quoting U.S.S.G. § 2D1.1(b)(1), cmt. n. 3). Furthermore, if it is reasonably foreseeable to a defendant that a co-conspirator possessed a weapon in connection with the offense, constructive possession is attribut-

able to that defendant as well. *See Williams*, 176 F.3d at 307.

In the instant case, on October 24, 1997, a search warrant was executed at 126 Chunn Lane in Bedford County. At that time, four individuals resided at that address: the owner Jesse Johnson, defendant Mark Dudeck, Dudeck's co-conspirator and brother David Dudeck, and David Dudeck's girlfriend Elizabeth Faulk. Johnson and Faulk were not charged in the conspiracy. Special Agent Timothy R. Lane, who was personally involved in the execution of the warrant, testified at the sentencing hearing that the property at 126 Chunn Lane consisted of a main dwelling house, in which Johnson, David Dudeck, and Faulk resided, and a small trailer twenty yards from the main house, in which defendant Dudeck resided. Lane testified that in one bedroom in the main house, later determined to be the bedroom shared by David Dudeck and Faulk, the officers found marijuana underneath the bed, scales, plastic bags, and a loaded .380 semiautomatic pistol laying on the dresser. A search of the trailer revealed marijuana and some currency. The search of 126 Chunn Lane resulted in the seizure of a total of 32.8 pounds of marijuana, two weapons,[1] a set of scales, drug paraphernalia, and $2,099.00 in currency. Both Dudecks and Faulk were present during the search, and they were thereafter taken into custody.

Dudeck argues on appeal that, because he resided in the trailer rather than the main house, there was no objective evidence that he either actually or constructively possessed the .380 pistol during the offense. Dudeck also claims that his brother's possession cannot be attributed to him, both because there is no evidence

---

**1.** The second weapon seized from the house was a Mossberg 20–gauge shotgun; because it was determined that the shotgun belonged to

Johnson and had no connection to the instant offense, it is not relevant for our purposes.

that his brother was the actual owner of the pistol and, alternatively, because the government failed to prove that he knew that his brother possessed the pistol or that such possession was reasonably foreseeable. The district court, noting that the pistol was in plain view in a room in which marijuana was stored, rejected these arguments and applied a two-level increase pursuant to § 2D1.1.

■ The district court's determination was not clearly erroneous. The pistol was found in plain view in a bedroom in the main house that was used to store substantial quantities of marijuana. The government presented evidence that, although defendant Dudeck's principal residence was the small trailer, he had unfettered access to the main house and frequently sold marijuana from the main house. The government thus presented substantial evidence that Dudeck constructively possessed the .380 pistol. *See United States v. Dunlap,* 209 F.3d 472, 479 (6th Cir.2000) (holding that the defendant had constructive possession of weapons confiscated at an apartment when the defendant co-signed the lease for that apartment and frequently conducted narcotics trade there, despite the defendant's argument that he lacked ready access to the apartment because his co-conspirator solely resided there).

Moreover, this same evidence would also suffice to support a conclusion that Dudeck knew or reasonably should have foreseen his brother's possession of the pistol in connection with the offense. Unlike in *United States v. Cochran,* 14 F.3d 1128, 1133 (6th Cir.1994), in which this court held that a co-conspirator's possession was not reasonably foreseeable to the defendant because the firearm was hidden under his co-conspirator's car seat and because his co-conspirator was only a small-time drug dealer, in the instant case the

pistol was in plain view in a room to which Dudeck had access and in which the drugs were stored.

As to the second step of the § 2D1.1 inquiry, Dudeck has presented no evidence of the improbability that the pistol was possessed in connection with the offense. Therefore, the district court did not clearly err in finding that Dudeck possessed a firearm in connection with a drug offense. *See, e.g., United States v. Calhoun,* 49 F.3d 231, 237 (6th Cir.1995) (explaining that it was not clearly improbable that the weapon was connected to the offense where the "weapon was of a type associated with drug trafficking, was easily accessible, and was kept loaded").

B.  Gregory Mirelez

Defendant Mirelez was named in nine counts of the superseding indictment. Pursuant to a written plea agreement, Mirelez agreed to plead guilty to counts one, two, and seven of the indictment in return for the dismissal of the remaining counts. Count one charged Mirelez and others with conspiracy to distribute marijuana in violation of 21 U.S.C. §§ 841 and 846. Counts two and seven charged Mirelez and others with money laundering offenses in violation of 18 U.S.C. § 1956. It was the government's position that Mirelez was guilty of the money laundering offenses because he had both received wire transfers from Guerrero as payment for marijuana and had also wired money at Guerrero's direction to Guerrero's Florida supplier as payment for marijuana. At the rearraignment, however, Mirelez denied ever having wired any money to anyone. Although he acknowledged having received wire transfers from Guerrero. Mirelez denied that this money was for marijuana. Despite these statements, Mirelez nevertheless offered to plead guilty to the offenses, acknowledging that the govern-

ment had evidence of the wire transfers. However, the district court refused to accept a plea on those counts. The government acquiesced in Mirelez's plea to count one alone.

The PSR recommended that Mirelez not receive an adjustment for acceptance of responsibility pursuant to § 3E1.1 of the Sentencing Guidelines. The PSR explained that, although Mirelez pleaded guilty to count one and admitted his participation in the marijuana distribution conspiracy, he denied that the funds that Guerrero wired to him were payments for marijuana. According to the PSR, "[h]is denial constitutes a denial of relevant conduct and he should not receive an adjustment for acceptance of responsibility." Joint Appendix ("J.A.") at 374 (Mirelez PSR). Mirelez objected to this recommendation, arguing that he "has accepted responsibility for counts over and above those of which he was actually guilty." J .A. at 396 (Def.'s Objection to PSR).

■ Under § 3E1.1 of the Sentencing Guidelines, the base offense level of a defendant who "clearly demonstrates acceptance of responsibility for his offense" should be decreased by two levels. U.S.S.G. § 3E1.1. The application notes to § 3E1.1 list as one appropriate consideration:

truthfully admitting the conduct comprising the offense(s) of conviction, and truthfully admitting or not falsely denying any additional relevant conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct). Note that a defendant is not required to volunteer, or affirmatively admit, relevant conduct beyond the offense of conviction in order to obtain a reduction under subsection (a) .... However, a defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a

manner inconsistent with acceptance of responsibility[.]

U.S.S.G. § 3E1.1, cmt. n. 1(a). "A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1, cmt. n. 3; *see also United States v. Chambers,* 195 F.3d 274, 278 (6th Cir.1999) (same). We review for clear error a district court's factual findings regarding whether a defendant is entitled to an adjustment for acceptance of responsibility. *United States v. Childers,* 86 F.3d 562, 563 (6th Cir.1996). We review de novo, however, the district court's application of the adjustment to its findings of fact. *Id.*

At the sentencing hearing, the government presented evidence of Mirelez's involvement in money laundering activities. The government presented the testimony of Special Agent Lynn Barker, with the criminal division of the Internal Revenue Service, who had subpoenaed and inspected Western Union records. Agent Barker testified that Guerrero wired money through Western Union directly to his supplier Martin Gloria in Florida as payment for marijuana, and that Guerrero sometimes wired the drug money to Mirelez. Agent Barker testified that the Western Union records reflected that there were three occasions on which Mirelez, who was living in Florida, received money from Guerrero in Tennessee, and one occasion on which he received money from one of Guerrero's associates. In response to a question regarding whether there was documentary evidence that it was in fact Mirelez who received the funds. Agent Barker explained that Western Union officials told her that they require proof of identification before issuing a check to an individual.

Agent Barker also testified that the Western Union records reflected three occasions on which Mirelez, while living in

Tennessee with Guerrero, wired money from Tennessee to Guerrero's Florida supplier Martin Gloria and his sister Juanita Gloria. Agent Barker testified that for two of these transfers, Western Union provided the actual form that the sender filled out, and Mirelez verified that the signature on those forms looked like his. Agent Barker also testified that Guerrero indicated that he used Mirelez to send money via Western Union. Guerrero testified at the sentencing hearing that one of the ways he paid for marijuana that he acquired from Martin Gloria was sending money via Western Union, and he testified that if he or someone on his behalf sent money to Gloria then it was to pay for marijuana.

Mirelez testified at the sentencing hearing and again denied unlawful money laundering activity. He testified that Guerrero sometimes wired him money via Western Union, but maintained that the money was wired to him for payment of bills. Additionally, he maintained that he never wired any money via Western Union. At the conclusion of the sentencing hearing, the district court denied Mirelez's motion for a downward adjustment for acceptance of responsibility. The court concluded that, based on a preponderance of the evidence, Mirelez "did send the three wire transfers to Florida[.][a]nd because of the defendant's failure to accept responsibility for these wire transfers, the probation office has correctly not given him an adjustment for acceptance of responsibility." J.A. at 323 (Sentencing Hr'g).

█ The district court's factual determination that Mirelez did not demonstrate an acceptance of responsibility was not clearly erroneous. The district court's finding that Mirelez falsely denied making illegal wire transfers on behalf of Guerrero is supported by the sentencing hearing transcript, and the application notes to § 3E1.1 instruct that the denial of relevant conduct is inconsistent with an acceptance of responsibility. *See* U.S.S.G. § 3E1.1, cmt. n. 1(a); *United States v. Mahaffey*, 53 F.3d 128, 134 (6th Cir.1995).

Mirelez argues that he was entitled to a § 3E1.1 reduction because of his offer to plead guilty on counts two and seven, in addition to count one. Mirelez contends that "[b]y attempting to plead guilty to Counts 2 & 7, [he] was accepting responsibility for more than he thought he had done, not less." Appellant's Br. at 10, Mirelez's argument, however, rests on the false assumption that a guilty plea (or offer to plead) is equivalent to an acceptance of responsibility. As the commentary to § 3E1.1, as well as case law from this circuit, makes plain, a reduction for acceptance of responsibility is inappropriate where a defendant does not accept full responsibility for the conduct comprising the offense of conviction. *See* U.S.S.G. § 3E1.1, cmt. n. 1(a); *United States v.. Bonds*, 48 F.3d 184, 189–90 (6th Cir.1995). Although Mirelez offered to plead guilty to counts two and seven, he denied much of the conduct comprising those offenses, including any criminal intent. *See Lutz*, 154 F.3d at 589. Therefore, Mirelez would not have been entitled to a reduction for acceptance of responsibility even if the district court had accepted his guilty plea to counts two and seven. Thus, we hold that the district court did not err in refusing to grant Mirelez a sentence reduction for acceptance of responsibility.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgments.