NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0631n.06

No. 10-6193

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jun 18, 2012*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | WESTERN DISTRICT OF TENNESSEE |
| RUBEN GAUNA, | ) | |
| | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: KENNEDY, MARTIN, and STRANCH, Circuit Judges.

JANE B. STRANCH, Circuit Judge. Defendant Ruben Gauna appeals the sentence imposed by the district court following his guilty plea to conspiracy to possess marijuana with the intent to distribute, in violation of 18 U.S.C. §§ 812, 841(a)(1), and 846. Following a sentencing hearing, the district court attributed twenty-eight pounds of marijuana and three ounces of crack cocaine to Gauna and sentenced him to sixty months imprisonment. Gauna asserts that the district court clearly erred in calculating the amounts of marijuana and crack cocaine attributable to him and by attributing drug amounts to him based on his conspiracy involvement without making particularized findings regarding the scope of that conspiracy. Gauna also challenges the district court's application of the obstruction of justice enhancement. For the following reasons, we AFFIRM Gauna's sentence.

## I. BACKGROUND

This case stems from the murder of Tennessee State Trooper Calvin Jenks, who was shot and killed by Alejandro Gauna[1] on January 6, 2007, after Trooper Jenks stopped the car in which Alejandro was riding. Alejandro purchased three pounds of marijuana from his brother Ruben Gauna and traveled from Austin, Texas to Tennessee in a rented Toyota with a coconspirator. Alejandro and the coconspirator were stopped by Trooper Jenks in Tipton County, Tennessee. Investigators later learned Alejandro and the driver of the car were involved in drug trafficking with Ruben Gauna and others.

On April 28, 2009, a federal grand jury returned an indictment charging Ruben Gauna and three codefendants with conspiracy to possess with intent to distribute marijuana, in violation of 18 U.S.C. §§ 812, 841(a)(1), and 846. On December 11, 2009, Gauna pled guilty to this charge in a written plea agreement. In exchange for the plea, the Government agreed to recommend a three-level reduction for acceptance of responsibility.

Gauna's Presentence Report ("PSR") set his base offense level at 26, adding a two-level enhancement for possession of a weapon and a two-level enhancement for obstruction of justice, thereby yielding a total offense level of 30. The Government subsequently recommended that certain drug amounts described in the PSR not be included in Gauna's relevant conduct and, in a Second Addendum to the PSR, his base offense level was reduced to 16, yielding a total offense level of 20. A Third Addendum to the PSR included a three-level reduction for acceptance of responsibility,

---

[1]Alejandro Gauna and the Defendant-Appellant Ruben Gauna are brothers. For clarity, we refer to Alejandro Gauna as "Alejandro" and Ruben Gauna as "Gauna" where their full names are not used.

reducing the total offense level to 17. Finally, a Fourth Addendum to the PSR was filed after the Government supplied the Probation Office with additional information from a witness willing to testify that she observed Gauna in conspiracy to traffic three ounces of crack cocaine. Gauna then had a base offense level of 32, a total offense level of 31, and a criminal history category of V, which yielded an advisory guideline range of 168 to 210 months, restricted by a statutory maximum of 60 months.

At a sentencing hearing on September 22, 2010, the district court heard testimony from three Government witnesses. Tennessee Bureau of Investigation Special Agent David Harmon testified regarding a January 2007 sworn statement by Kimberly Young, the girlfriend of coconspirator Emilio Fernandez. Young said she saw a trash bag in which she counted twenty-eight bricks of marijuana that was delivered to Ruben Gauna at the trailer where the Gauna brothers, Young, and Fernandez lived. Harmon testified officers found a trash bag that contained marijuana residue in a garbage can inside the residence.

The second Government witness, Jennifer Hernandez, testified that Gauna's brother, Alejandro, lived with her for six months to one year prior to 2006, during which time she occasionally purchased marijuana from Alejandro. She testified that Alejandro only became a "big time seller" when he moved out—about the time Ruben Gauna was released from jail and moved in with Alejandro. Hernandez testified that she purchased marijuana at least three times a week from Alejandro in 2006; that Ruben Gauna was with Alejandro most of those times and gave her marijuana on a few occasions; and that she saw crack cocaine at the Gaunas' residence "just about every time" she went to buy marijuana there. On one occasion when the Gaunas were both present,

Hernandez observed "at least like two ounces, two and a half ounces" of crack cocaine packaged for distribution.

Finally, codefendant Emilio Fernandez testified that he met Gauna's brother, Alejandro, in October 2006; that he purchased crack cocaine from Alejandro once or twice a day; and that on at least two occasions, he purchased crack cocaine from Gauna. On one of these occasions, Fernandez testified that Gauna "fronted" him crack cocaine supplied by Alejandro and Guana told Fernandez that he had just gotten out of jail and he would go back if necessary because he would kill Fernandez if Fernandez didn't pay his brother back the money. Fernandez testified Gauna was with Alejandro about half of the times that Fernandez purchased crack cocaine from Alejandro.

In December 2006, Alejandro and Ruben Gauna moved in with Fernandez and Fernandez's girlfriend, Kimberly Young, in their trailer home. The Gauna brothers kept a safe in an empty room in the trailer. Both Alejandro and Ruben Gauna used the safe. Fernandez testified he observed bags of crack and bags of powder cocaine in the safe, totaling over an ounce of crack cocaine during the time the Gaunas lived there. Fernandez testified it was obvious to him that Ruben Gauna was involved in drug distribution with Alejandro.

Fernandez testified that after Alejandro shot and killed Trooper Jenks, Ruben Gauna repeatedly called Fernandez. Over several calls, Gauna warned him "something had happened," police would be coming to the trailer home, and he should get out of the house. Gauna instructed Fernandez not to tell police that the Gaunas had been staying at the trailer and to report falsely that the car Alejandro was driving had been stolen.

At the close of all evidence, and after hearing from Gauna, his attorney, and the Government, the district court attributed twenty-eight pounds (estimating one pound per bundle) of marijuana and three ounces of crack cocaine to Gauna. The district court confirmed this yielded a Guideline Range of 168 to 210 months, but sentenced Gauna to the statutory maximum of 60 months' imprisonment.

## II. DISCUSSION

### A. Calculation of Drugs Attributable to Gauna

#### 1. Standard of Review

This Court reviews a sentencing court's determination of the quantity of drugs attributable to a defendant for clear error. *United States v. Jackson*, 470 F.3d 299, 310 (6th Cir. 2006). "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. Vasquez*, 352 F.3d 1067, 1070 (6th Cir. 2003) (alteration in original) (quoting *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985)). "A reviewing court may not reverse a finding of the trier of fact merely because it would have decided the matter differently." *Id.* at 1070-71. Rather, "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Id.* (alteration in original) (quoting *Anderson*, 470 U.S. at 573-74).

"The government must prove the amount to be attributed to a defendant by a preponderance of the evidence." *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004) (quoting *United States v. Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000)). "A reviewing bench should sustain a

sentencing court's factual finding if it was supported by some minimum indicium of reliability beyond mere allegation." *Hernandez*, 227 F.3d at 699 (citations and internal quotation marks omitted). If "the exact amount of drugs involved is uncertain, the court may make an estimate supported by competent evidence." *United States v. Keszthelyi*, 308 F.3d 557, 576 (6th Cir. 2002) (citation omitted). District courts may approximate the quantity of drugs for sentencing purposes based upon circumstantial evidence as long as they err on the side of caution. *See United States v. Elder*, 90 F.3d 1110, 1127 (6th Cir. 1996).

### 2. Marijuana

Gauna argues the district court erred in attributing twenty-eight pounds of marijuana to him because the court failed to credit Fernandez's PSR statement that he only saw eight bundles of marijuana. At the sentencing hearing, Special Agent Harmon testified that Young told him she observed twenty-eight bundles of marijuana delivered to Gauna and that she counted those bundles. Gauna points to Fernandez's PSR statement that he observed Rivera Arvizu, a supplier of marijuana to Ruben Gauna, come to their trailer residence in early January 2007 and bring eight bundles of marijuana to Gauna. The PSR also states that Fernandez overheard Gauna say, shortly before Alejandro's drive to Tennessee, that Gauna sold Alejandro three pounds of marijuana and, as a result, he did not have enough marijuana for his customers. Although Fernandez testified at the sentencing hearing, neither the Government nor Gauna's counsel questioned him regarding the amount of marijuana he observed. Gauna asserts Fernandez's PSR statement that he saw eight bundles should overcome Young's statement because Fernandez was in a better position to know

the quantity of marijuana given Young's PSR statement that Fernandez acted as an interpreter between Arvizu and Gauna for the drug deal.

At the sentencing hearing, Gauna's counsel presented the court with Fernandez's PSR statement to dispute Young's claim of twenty-eight bundles. The district court found Young's statement and the testimony of Special Agent Harmon to be credible. Gauna's counsel noted that the district court had also found Fernandez's hearing testimony credible, to which the court responded that the statements could be reconciled because someone might see only eight bundles, though there could be twenty-eight bundles in total, or one could have seen them at different times. In crediting Young's statement, the district court essentially made credibility determinations regarding Special Agent Harmon's testimony and the statements provided by Young and Fernandez.

"The sentencing court's credibility determinations, like other factual findings, must be accepted on review unless shown to be clearly erroneous." *United States v. Hurst*, 228 F.3d 751, 761 (6th Cir. 2000). This Court "accords great deference to such credibility determinations," *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999), because the district court is "in the best position to judge credibility," *United States v. Bradshaw*, 102 F.3d 204, 210 (6th Cir. 1996) (finding it not clearly erroneous for the district court to credit testimony and articulate, on its own, plausible explanations for apparent inconsistencies). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson*, 470 U.S. at 574; *see also United States v. Dillard*, 438 F.3d 675, 681 (6th Cir. 2006) (holding district court's reconciliation of seemingly contradictory testimony was not clearly erroneous). As the district court reasoned, the statements of Young and Fernandez could be reconciled because it is possible

Fernandez only observed a subset of the marijuana Arvizu brought Gauna.[2] The court's crediting

of Young's statement that she counted twenty-eight bundles and its reasoning that this statement was

reconcilable with Fernandez's testimony were not clearly erroneous.

### 3.        Crack Cocaine

Gauna argues the district court clearly erred in attributing three ounces of crack cocaine to

him because this estimate was based on the unreliable testimony given by Jennifer Hernandez. The

PSR attributed three ounces of crack cocaine to Gauna based on Hernandez's statement that she

observed three ounces on one particular occasion. Hernandez's sentencing hearing testimony,

however, only established two ounces during that incident, which the Government conceded at the

hearing. However, Emilio Fernandez testified he observed an ounce of crack cocaine in the Gaunas'

safe, bringing the total to three ounces, which the district court noted was a "very, very, very

conservative determination."

Gauna disagrees that Hernandez's testimony established even two ounces because he asserts

her testimony was not reliable. Gauna points out that, when asked to approximate the amount of

total crack cocaine Hernandez witnessed whenever she went to the Gaunas' residence, Hernandez

testified she "really didn't know" because "crack cocaine is totally different from marijuana" and

"little bitty stones sitting up there, you don't know what it is, if it is half an ounce, a whole ounce,

---

[2]Notably, although Young testified that Fernandez acted as an interpreter during the drug transaction between Gauna and Arvizu—and Gauna relies on this to argue Fernandez is a more credible witness—Fernandez stated Gauna sent him to the back room as soon as Arvizu arrived and that Fernandez only knew that the bundles contained marijuana because he later found marijuana residue on the kitchen floor. Even if the two statements could not be reconciled, it would not be clear error for the district court to credit Young's statement that she snuck back and actually counted twenty-eight bundles over Fernandez's statement that he saw Arvizu bring in eight bundles before he was sent to the back room.

you don't know." The Sentencing Guidelines establish a minimum indicia-of-reliability standard that evidence must meet in order to be admissible in sentencing proceedings. U.S.S.G. § 6A1.3(a) (2009). "Thus, pursuant to § 6A1.3, 'the district court is obligated to rely on reliable evidence at sentencing.'" *United States v. Christman*, 509 F.3d 299, 305 (6th Cir. 2007) (citation omitted). When asked about her ability to identify particular quantities of crack cocaine, Hernandez testified, "I have seen it on the street . . . and knew what it was. I knew about how much it was too." She testified she had seen the same amount of crack cocaine before, she was familiar with it because her family members used crack cocaine, she knew an ounce of crack cocaine was about twenty-eight grams, and that an ounce of crack cocaine was smaller than an ounce of marijuana. Despite her concerns about identifying amounts, Hernandez ultimately stated that she observed more than two and a half ounces but less than ten ounces over the period in which she visited the Gaunas' residence.

Gauna is correct that Hernandez's testimony reveals she was more confident in the amount of crack cocaine she witnessed on the one particular incident than the total amount she observed over the entire period during which Gauna was present. However, neither the Government nor the district court attributed the larger amount (potentially ten ounces) to Gauna. Hernandez consistently testified at the hearing that she observed at least two ounces of crack cocaine on one occasion. Although Hernandez's PSR statement estimated three ounces on one occasion and her hearing testimony only estimated two, the Government asked Hernandez to be conservative in her estimates at the hearing. Gauna questioned Hernandez's credibility at the sentencing hearing and the district court expressly found her to be a credible witness and also stated that Fernandez's observance of crack cocaine in Gauna's residence corroborated Hernandez's testimony.

Gauna cites *United States v. Robison*, 904 F.2d 365 (6th Cir. 1990), to support his argument that Hernandez's testimony was unreliable. However, Hernandez's testimony is clearly distinguishable from the unreliable testimony in that case. In *Robison*, this Court held the witness's testimony about cocaine quantities was not "sufficiently accurate" because the witness admitted (1) she was a heavy drug user subject to periods of memory loss; (2) the time period at issue in the case was "a very hazy time" because of her level of drug usage; (3) she could not initially fix an estimate of drugs and felt pressured into doing so; and (4) her estimate "was totally a guess" for which she had "no factual basis." *Id.* at 371-72. Hernandez's lack of confidence in estimating an aggregate amount of observed crack cocaine over an extended period of time does not rise to the level of unreliability exhibited in *Robison*.

Gauna does not directly challenge the reliability of Fernandez's testimony that he observed an ounce of crack cocaine in Gauna's safe. Instead, Gauna asserts no other testimony provided reliable evidence of crack cocaine amounts attributable to him because no witness ever observed him dealing in crack cocaine. However, this argument lacks foundation because Fernandez testified that he purchased crack cocaine from Gauna on two separate occasions. As with Hernandez, the district court found Fernandez a credible witness. Gauna has failed to demonstrate that the district court clearly erred in its assessment of the credibility of Hernandez and Fernandez or its finding that three ounces of crack cocaine should be attributed to Gauna.

### 4.      Scope of the Conspiracy

Gauna argues the district court erred by finding Gauna responsible for three ounces of crack cocaine attributable to Alejandro without making individualized findings concerning the scope of

the conspiracy to which Ruben Gauna agreed. For a defendant to be held accountable for the actions of coconspirators, "(1) the conduct must be in furtherance of the jointly undertaken criminal activity; and (2) the conduct must be reasonably foreseeable in connection with that criminal activity." *United States v. Campbell*, 279 F.3d 392, 399 (6th Cir. 2002) (citing U.S.S.G. § 1B1.3, cmt. n.2). "[I]ndividualized findings regarding the scope of the conspiracy and the duration and nature of each defendant's participation in the scheme" are required, *United States v. Meacham*, 27 F.3d 214, 217 (6th Cir. 1994), and a preponderance of reliable evidence must establish both scope and foreseeability, *United States v. Critton*, 43 F.3d 1089, 1098-99 (6th Cir. 1995).

Gauna does not dispute a foreseeability finding; rather, he argues that the court did not make any particularized findings regarding the scope of the criminal activity to which Gauna agreed. However, the record shows the court did make a finding regarding the scope of the conspiracy, as it noted that the court had looked at the drug conspiracy and the scope of the drug conspiracy, and "we have gone through that and set that out in a lot of detail." The discussion preceding this statement recounts the Government's argument that the drug conspiracy, in addition to marijuana, included a conspiracy to sell and distribute crack cocaine as evidenced by the testimony of Hernandez and Fernandez. After discussing the witnesses' credibility, the court concluded "the evidence in the case that has been presented by the government supports the position that Mr. Ruben Gauna and his brother were involved in a drug distribution operation, that it involved marijuana and cocaine trafficking, that it was one conspiracy."

The district court's finding that a preponderance of the evidence showed a conspiracy to distribute both marijuana and crack cocaine was not clearly erroneous. Although mere presence

alone will not support a finding of conspiracy, presence is a material and probative factor which may be considered, and a defendant's participation in the conspiracy's common purpose and plan may be inferred from the defendant's actions and reactions to the circumstances. *See United States v. Hodges*, 935 F.2d 766, 773 (6th Cir. 1991) (citing *United States v. Christian*, 786 F.2d 203, 211 (6th Cir. 1986)). There is sufficient evidence that Gauna participated in a conspiracy to sell crack cocaine, including Fernandez's testimony that Gauna (1) sold him crack cocaine on two occasions, (2) threatened to kill Fernandez if he did not pay Alejandro for the "fronted" drugs, and (3) shared a safe with his brother in which both powder and crack cocaine were stored. Therefore, the district court made the requisite finding that the scope of the conspiracy to which Gauna agreed included the sale of crack cocaine and such a finding was not clearly erroneous.

## A. Sentencing Enhancement for Obstruction of Justice

### 1. Standard of Review

This Court has utilized two different standards of review when examining a district court's application of the sentencing enhancement for obstruction of justice under U.S.S.G. § 3C1.1, including both a tri-partite standard of review and a more deferential standard that applies clear error review to the entire analysis. *See United States v. Cole*, 359 F.3d 420, 430-31 (6th Cir. 2004). Under the three-part standard, this Court first reviews the factual determinations made by the district court for clear error. *United States v. Middleton*, 246 F.3d 825, 845-46 (6th Cir. 2001). "Second, a district court's conclusion that a given set of facts constitutes obstruction of justice is a mixed question of law and fact that we review de novo. Finally, once a district court has determined that a defendant has obstructed justice, then application of a two-level enhancement at that point is

mandatory, and we review the enhancement de novo." *Id.* (citation omitted). In contrast, in *United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002), this Court held that a clear error standard of review was appropriate for reviewing sentencing enhancements under U.S.S.G. § 3C1.1 where "the sole issue before the district court is a fact-bound application of the guideline provisions." *Id.* at 390. We have not yet endorsed a particular approach, *Cole*, 359 F.3d at 431, but we need not decide this issue here because the district court's decision in this case is correct under either standard.

### 2. Analysis

The district court applied a two-level sentencing enhancement for obstruction of justice based on the phone calls from Gauna to Fernandez, which the court characterized as "a persistent tipoff." Guidelines § 3C1.1 provides for a two-level enhancement if "the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation, prosecution, or sentencing of the instant offense." Obstruction of justice can include "destroying or concealing or directing or procuring another person to destroy or conceal evidence that is material to an official investigation or judicial proceeding . . . , or attempting to do so," as long as it is not solely conduct that occurs "contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance)." *Id.*, cmt. n.4(D).

Gauna disputes the factual basis for the enhancement solely on the ground that there was no evidence presented at the hearing establishing that Gauna advised Fernandez to dispose of drug evidence when he and Young left the trailer. This argument is irrelevant because the district court did not rely on destruction of drugs from the house. Rather, the district court concluded that a

preponderance of the evidence showed the phone calls were made in an attempt to remove individuals from the area and to obstruct the investigation. Fernandez testified, and Gauna did not dispute, that Gauna called him several times to warn Fernandez the police were coming, to tell him to get out of the house, to direct him to report the car as stolen, and to instruct him not to mention that the Gaunas lived at the trailer. At argument, Gauna's counsel characterized the phone calls as merely informing Fernandez that police were coming to their residence. This ignores Fernandez's undisputed testimony that Gauna also directed Fernandez to report as stolen the vehicle Alejandro had been riding in and to lie to law enforcement about whether the Gauna brothers lived with Fernandez. This Court has previously held that an obstruction enhancement was properly applied where a defendant called another person from jail asking him to report a getaway vehicle as stolen. *United States v. Waldon*, 206 F.3d 597, 609 (6th Cir. 2000) ("This telephone call clearly qualifies as an attempt on the part of Waldon to direct another person to conceal evidence material to the investigation."). Based on Fernandez's testimony, the district court did not clearly err in finding these facts and, even under the less deferential de novo standard, the court properly applied the enhancement to Gauna.

Alternatively, Gauna argues that, even if there were facts sufficient to trigger the enhancement, his conduct fell within the "contemporaneously with arrest" exception. Application note 4(D) of Guidelines § 3C1.1 states that, if the defendant's obstructive actions "occurred contemporaneously with arrest (e.g., attempting to swallow or throw away a controlled substance), it shall not, standing alone, be sufficient to warrant an adjustment for obstruction unless it resulted in a material hindrance to the official investigation or prosecution of the instant offense or the

sentencing of the offender." This Court considered the application of this exception in *Waldon*, finding that the exception did not apply because Waldon made the phone call six hours after his arrest and, therefore, his actions were not an immediate attempt at obstruction. 206 F.3d at 608-09.

Gauna argues that his phone calls were made contemporaneously with Alejandro's arrest. At the sentencing hearing, Fernandez could not remember the exact times of the phone calls but it is undisputed that Gauna called Fernandez multiple times. *See United States v. Swoveland*, 51 F. App'x 516, 517 (6th Cir. 2002) (a thirty-minute period between defendant's arrest and phone call to a third party requesting destruction of evidence in her home was sufficient time "to contemplate her actions before the call was made"). Gauna clearly had time to contemplate his actions, if not before the first phone call, at least before his later calls. Therefore, the "contemporaneously with arrest" exception does not apply and the district court properly applied the obstruction of justice enhancement to Gauna's sentence.

## III. CONCLUSION

For the foregoing reasons, we **AFFIRM** Gauna's sentence.