RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 19a0202p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

> No. 18-2428

ANTHONY DWAYNE MCCLOUD, II,

*Defendant-Appellant*.

───────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:17-cr-00151-1—Robert J. Jonker, District Judge.

Decided and Filed: August 20, 2019

Before: GILMAN, SUTTON, and WHITE, Circuit Judges.

───────────────

**COUNSEL**

**ON BRIEF:** Larry C. Willey, WILLEY & CHAMBERLAIN LLP, Grand Rapids, Michigan, for Appellant. Mark V. Courtade, UNITED STATES ATTORNEY'S OFFICE, Grand Rapids, Michigan, for Appellee.

GILMAN, J., delivered the opinion of the court in which SUTTON, J., joined, and WHITE, J., joined in the judgment. WHITE, J. (pg. 10), delivered a separate opinion concurring in the judgment.

───────────────

**OPINION**

───────────────

RONALD LEE GILMAN, Circuit Judge. Anthony McCloud, II pleaded guilty to one count of conspiracy to distribute methamphetamine and to one count of actually distributing the drug. He was sentenced to 180 months of imprisonment. The district court applied a two-level

sentencing enhancement because McCloud carried a firearm during an attempt to buy marijuana during the course of the conspiracy.

McCloud argues that the district court erred in applying the enhancement because, according to him, the marijuana incident is not "relevant conduct" under the Sentencing Guidelines. His argument is primarily based on the fact that he pleaded guilty to charges involving methamphetamine, whereas the firearm was related solely to the marijuana incident. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

### A. Factual background

Officers from the Lansing Police Department conducted trash pulls in March and April 2016 at the Hughes Road residence where McCloud lived with his girlfriend Stephanie Clark. The officers uncovered marijuana leaves and stems, potting soil, growing liquid, and handwritten marijuana labels. In April 2016, the police executed a search warrant at the Hughes Road residence and seized 22 grams of methamphetamine, 13 grams of cocaine, 2.5 pounds of marijuana, and 26 marijuana plants. The police then arrested McCloud and requested state charges for manufacturing marijuana, maintaining a drug house, and possession with intent to distribute cocaine and methamphetamine. McCloud was released that same day.

Approximately a year later, Clark sold methamphetamine to an undercover police officer on seven separate occasions, the last being for 112 grams in July 2017. On the day that the July transaction was scheduled to occur, the police conducted surveillance and observed McCloud and Clark in a residence on Stoll Road in DeWitt, Michigan. The Stoll Road residence was rented by McCloud and Marlo Doerr. Doerr told the police that she was McCloud's ex-girlfriend. During their surveillance, the police saw McCloud drive from the Stoll Road residence to a house occupied by Tracy Withers. Later that same day, a task force of Lansing police and federal law-enforcement agents executed a search warrant at the residence on Stoll Road. They observed an unspecified quantity of methamphetamine, which resulted in McCloud's arrest.

Clark participated in two police interviews. She told the police that McCloud provided her with all of the methamphetamine that she sold and that she gave McCloud the money from the sales. Clark estimated that she and McCloud had sold a total of between 560 and 700 grams of methamphetamine during the relevant time period.

Police surveillance established that McCloud was involved in drug dealing with Clark, Doerr, Withers, and Shariece Pickett. This caused the police to conduct lawful searches of Withers's and Pickett's residences. They found a handgun at Withers's residence. At Pickett's residence, they found a small amount of methamphetamine, and Pickett admitted to receiving and storing methamphetamine for McCloud. Clark later told the police that McCloud stored methamphetamine at Withers's and Pickett's residences.

During her interviews with the police, Clark described an instance when she went to Detroit with McCloud and Withers to meet with a marijuana supplier. The trip happened at an unspecified time between the April 2016 search of the Hughes Road residence and the July 2017 arrests. McCloud and Withers went together in one vehicle, and Clark followed in a second vehicle. They brought Withers's handgun on the trip. Once they arrived, McCloud got out of the car to meet with the drug supplier, but came back running, with Withers's gun in hand, saying that he had been robbed and that they needed to leave immediately. They drove back to Lansing without the drugs. Withers admitting to making this Detroit trip, and she confirmed that McCloud was in possession of her handgun when he got robbed. She claimed, however, that she did not know the purpose of the trip.

**B. Procedural background**

McCloud pleaded guilty to counts one and eight of the indictment. Count one charged him with conspiracy to distribute, and to possessing with the intent to distribute, 500 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 846 and 841(a)(1), (b)(1)(A)(viii). And count eight alleged that McCloud and Clark distributed 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B)(viii).

In the Presentence Report, the Probation Office recommended that the district court apply a two-level enhancement pursuant to § 2D1.1(b)(1) of the United States Sentencing Guidelines because "McCloud carried [a] firearm during a drug transaction." McCloud objected to the enhancement on the following grounds: (1) he possessed the firearm during an attempt to buy marijuana, not methamphetamine; (2) the attempted marijuana transaction never occurred because McCloud was robbed; and (3) the firearm was not used.

The government acknowledged at sentencing that McCloud might be correct in his objection to the two-level enhancement. But the district court nevertheless found that the enhancement was appropriate. The court stated that "the overall relevant conduct . . . included and focused on meth . . . but also had cocaine and marijuana." It therefore concluded that the Detroit trip was "relevant conduct." The court noted that McCloud actually handled the firearm during an attempted drug transaction, and that the trip occurred during the relevant timeframe of the conspiracy and with two other people involved in the conspiracy.

Applying the two-level enhancement yielded a final offense level of 35. McCloud's criminal history placed him in category III, so his advisory Guidelines range was 210 to 262 months of imprisonment. The court imposed a below-Guidelines sentence of 180 months. Had the court not applied the two-level firearm enhancement, McCloud's advisory Guidelines range would have been 168 to 210 months of imprisonment. But the fact that McCloud's ultimate sentence is within the Guidelines range without the two-level enhancement does not compel a finding of harmless error if the enhancement were to be deemed improper. *See United States v. Vandeberg*, 201 F.3d 805, 812 (6th Cir. 2000) (holding that the district court's erroneous sentencing enhancement did not constitute harmless error where the defendant was sentenced to 140 months and the enhancement elevated the applicable Guidelines range from 120-150 months of imprisonment to 140-175 months).

## II. ANALYSIS

### A. Standard of review

"[T]his court has held that our standard of review of a district court's application of provisions of the Sentencing Guidelines to the facts should be treated deferentially and should

not be disturbed unless clearly erroneous." *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017). "The district court's interpretation of the Guidelines and mixed questions of law and fact are reviewed *de novo*[,] while factual findings are reviewed for clear error." *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017). "A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding subject to the clearly erroneous standard of review." *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (quoting *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir. 1996)).

## B. Firearm enhancement under § 2D1.1(b)(1) of the Sentencing Guidelines

Section § 2D1.1(b)(1) of the United States Sentencing Guidelines authorizes courts to impose a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." "The enhancement should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S. Sentencing Guidelines Manual § 2D1.1 cmt. n.11(A) (U.S. Sentencing Comm'n 2018). This two-level enhancement "reflects the increased danger of violence when drug traffickers possess weapons." *Id.*

"In order for § 2D1.1(b)(1) to be applicable, the government must establish (1) that the defendant 'possessed' the weapon, and (2) that such possession was during the commission of the offense." *United States v. Sanchez*, 928 F.2d 1450, 1460 (6th Cir. 1991), *abrogated on other grounds by United States v. Jackson-Randolph*, 282 F.3d 369 (6th Cir. 2002). The government must prove these elements by a preponderance of the evidence. *United States v. Catalan*, 499 F.3d 604, 606 (6th Cir. 2007). "Once it is established that a defendant was in possession of a weapon during the commission of an offense, a presumption arises that such possession was connected to the offense." *Sanchez*, 928 F.2d at 1460. The burden then shifts to the defendant "to demonstrate that 'it is clearly improbable that the weapon was connected to the offense,' in which case the enhancement would not be applicable." *Id.* (quoting U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) cmt. 11(A) (U.S. Sentencing Comm'n 2018) (previously cmt. 3)). "A defendant must present evidence, not mere argument, in order to meet his or her burden." *United States v. Greeno*, 679 F.3d 510, 514 (6th Cir. 2012).

This court recognized in *United States v. Faison*, 339 F.3d 518 (6th Cir. 2003), that the 1991 amendments to the Sentencing Guidelines removed the requirement that the weapon be possessed during the commission of the specific crime charged in the indictment. *Id.* at 520. "[A]ll that the government need show is that the dangerous weapon be possessed during 'relevant conduct.'" *Id.*

"Relevant conduct under the sentencing guidelines includes 'all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction.'" *Id.* (ellipsis in original) (quoting U.S Sentencing Guidelines Manual § 1B1.3(a)(2)). "For two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as a common victims, common accomplices, common purpose, or similar *modus operandi*." U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.5(B)(i) (U.S. Sentencing Comm'n 2018). The Guidelines further note that

> [o]ffenses that do not qualify as part of a common scheme or plan may nonetheless qualify as part of the same course of conduct if they are sufficiently connected or related to each other as to warrant the conclusion that they are part of a single episode, spree, or ongoing series of offenses. Factors that are appropriate to the determination of whether offenses are sufficiently connected or related to each other to be considered as part of the same course of conduct include the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses. When one of the above factors in absent, a stronger presence of at least one of the other factors is required.

*Id.* at cmt. n.5(B)(ii).

## C. The district court did not err in applying the two-level enhancement for using a firearm.

McCloud argues that the Detroit trip is not relevant conduct. He therefore contends that the district court erred in applying the two-level enhancement for using a firearm under § 2D1.1(b)(1) of the Sentencing Guidelines. Specifically, he argues that (1) using a gun was not a regular occurrence, (2) the Detroit trip could have occurred more than a year before the methamphetamine sales in May through July 2017, and (3) the Detroit trip was not similar to the charged conduct because the trip involved marijuana rather than methamphetamine.

The district court found that although "the government charged this as a meth conspiracy, . . . the overall relevant conduct as described in terms of what was found in various homes along the way included . . . cocaine and marijuana." It then noted that "one of the sources of meth for Mr. McCloud, whatever else he might have been doing in Detroit, was in Detroit." Next, the court observed that the Detroit trip involved Clark and Withers, who were both involved in the conspiracy. It therefore concluded that the Detroit trip "is within the scope of the overall conspiracy and relevant conduct." Finally, the court noted that the firearm was "actually handled by Mr. McCloud in the course of . . . an attempted drug transaction."

Based on these findings of fact, the court concluded that the Detroit trip was relevant conduct. We agree. The Detroit trip and the charged conduct in the present case are part of the same common scheme or plan because they are "substantially connected to each other by at least one common factor." *See* U.S. Sentencing Guidelines Manual § 1B1.3 cmt. n.5(B)(i) (U.S. Sentencing Comm'n 2008).

One of these common factors is that the Detroit trip and the charged methamphetamine conspiracy had common accomplices. Withers and Clark accompanied McCloud on the Detroit trip, and they were also involved in the conspiracy to distribute methamphetamine. Clark sold methamphetamine to an undercover agent in seven separate instances between May and July 2017, including the sale that led to her arrest. And, according to Clark, Withers stored methamphetamine for McCloud and delivered packages of methamphetamine to the Hughes Road residence shared by McCloud and Clark. Clark, moreover, told the police that Withers provided her with the methamphetamine used for the seventh buy in July 2017.

The trip to Detroit also shared a common purpose with the charged conduct: to distribute drugs. Although the indictment was based on a conspiracy to distribute methamphetamine, McCloud's drug activities included the possession and distribution of cocaine and marijuana.

We must accept the district court's factual findings unless they are clearly erroneous. *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017). They are not. Trash pulls of the Hughes Road residence in March and April 2016 uncovered marijuana leaves and stems, potting soil, growing liquid, and handwritten marijuana labels—all evidence demonstrating that

McCloud was growing and distributing marijuana. And when the police executed a search warrant at that residence in April 2016, they found 2.5 pounds of marijuana, 26 marijuana plants, marijuana grow lights, a humidifier, light timers, a digital scale, and a marijuana drying net. McCloud, in fact, admitted to growing and selling marijuana. Finally, the Presentence Report attributed cocaine and marijuana to McCloud without any objection on his part. These facts counter McCloud's argument that the Detroit trip is not relevant conduct because it involved marijuana rather than methamphetamine.

Moreover, as the government argues, caselaw supports considering an incident relevant conduct even if the incident involves a different drug than the charged conduct. In *United States v. Deitz*, 577 F.3d 672 (6th Cir. 2009), for example, this court held that Deitz's possession of cocaine and sales of marijuana were within the scope of a conspiracy to possess and distribute methamphetamine. *Id.* at 678–80. The government also points to this court's unpublished decision in *United States v. Gauna*, 485 F. App'x 70 (6th Cir. 2012), where this court held that three ounces of crack cocaine were within the scope of a conspiracy to possess and distribute marijuana. *Id.* at 76–77.

Furthermore, the Detroit trip occurred during the timeframe of the charged conspiracy. Count one of the indictment charged that McCloud, Clark, and Pickett engaged in a conspiracy to distribute methamphetamine from January 2015 to July 2017. And although we do not know exactly when McCloud, Clark, and Withers went to Detroit to meet with the marijuana supplier, we do know that the trip happened between the April 2016 search of the Hughes Road residence and the July 2017 arrest. The trip therefore occurred during the timeframe of the charged conspiracy.

Finally, the Detroit trip and the charged conduct had a similar modus operandi— obtaining drugs from a supplier in Detroit. McCloud had a supplier of methamphetamine there. On one occasion, he gave Pickett money and instructed her to travel to a residence in Detroit and return to McCloud what she received at the residence. She returned with a teddy bear, from which she saw McCloud remove narcotics. All told, Pickett took three trips to Detroit to obtain drugs for McCloud. And McCloud stated that the supplier in Detroit brought him the methamphetamine that Clark sold in Lansing from May to July of 2017.

McCloud's argument that the Detroit trip was not relevant conduct focuses on the factors laid out in *United States v. Amerson*, 886 F.3d 568 (6th Cir. 2018). These factors are similarity, regularity, and the time interval between offenses. *Id.* at 574. But McCloud fails to address whether the Detroit trip and the charged conduct were *part of a common scheme or plan*, which is an alternative basis for a finding of relevant conduct that is not subject to the *same-course-of-conduct factors* set forth in *Amerson*. *See* U.S Sentencing Guidelines Manual § 1B1.3(a)(2), cmt. n.5(B)(ii) (U.S. Sentencing Comm'n 2018); *Amerson*, 886 F.3d at 574 (applying the factors to determine whether a defendant's possession of a handgun was part of the same course of conduct as his underlying conviction). Because we conclude that the Detroit trip and the charged conduct were part of a common scheme or plan, we need not address whether they were also part of the same course of conduct under the *Amerson* factors.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

---

**CONCURRING IN THE JUDGMENT**

---

HELENE N. WHITE, Circuit Judge, concurring in the judgment. I concur in the judgment on the basis that the district court did not clearly err in concluding—based on the large quantity of marijuana found at the Hughes Road address, which McCloud claimed to share with co-conspirator Clark, and Clark's and Withers's accompanying McCloud to Detroit, riding in two cars, with Withers bringing her gun—that the trip to Detroit was part of a common scheme or plan to distribute drugs.