NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0553n.06

Case No. 20-6158

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Dec 01, 2021
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

GUADALUPE RAMOS, aka Junior,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY

OPINION

---

Before: McKEAGUE, GRIFFIN, and KETHLEDGE, Circuit Judges.

**McKEAGUE, Circuit Judge.** Defendant-Appellant Guadalupe Ramos was indicted for drug trafficking. When federal agents searched his home, car, and stash house, they found multiple firearms in addition to large quantities of drugs. Ramos was sentenced to 240 months' imprisonment with a five-year term of supervised release. Ramos challenges the district court's application of a two-level firearm enhancement and the imposition of a particular special condition of supervised release. We AFFIRM.

## I. Facts

In November 2019, federal agents identified Guadalupe Ramos as a drug trafficker. They obtained a warrant to search Ramos's Bright Avenue address that he maintained as a stash house. There, they found 3.62 kilograms of methamphetamine, 12,500 pressed fentanyl pills, 50 pounds of marijuana, 156 grams of heroin, scales, a packing press, a heating press, cutting agents, and

9mm ammunition. Agents also searched his residence at Russell Cave, finding 138 grams of methamphetamine, a small amount of marijuana, digital scales, heat sealers, a money counting machine, body armor, a Taurus .40 caliber revolver, a loaded Smith & Wesson .38 caliber revolver, and an American Tactical rifle. Finally, agents stopped and searched Ramos's vehicle, finding a loaded Century Arms pistol and a loaded Ruger 9mm pistol.

A grand jury indicted Ramos for possession with intent to distribute: (1) 500 grams or more of methamphetamine; (2) 40 grams or more of fentanyl; and (3) marijuana. Ramos pleaded guilty to all three counts. The plea agreement set forth a factual basis for these crimes that detailed federal agents' search of Ramos's stash house and his home, specifying that multiple firearms were found at his home. The agreement stipulated that these facts constitute relevant conduct under U.S.S.G. § 1B1.3. The agreement also reserved the right to challenge the court's application of a two-level enhancement for possession of a firearm under U.S.S.G. § 2D1.1(b)(1).

The presentence report recommended applying the firearm enhancement. Ramos objected to the report's recommendation and objected again at his sentencing hearing. He argued that the firearms found at his residence were not involved with or possessed during the drug activities, and so the government did not carry its burden under the applicable test. Ramos also argued that even if the government did meet its burden, it was clearly improbable that the weapons were connected with the offense.

The district court overruled the objection and applied the enhancement, finding that there was evidence that the weapons were possessed in connection with drug-trafficking activities, and so the government met its burden.

The court sentenced Ramos to 240 months' imprisonment followed by a five-year term of supervised release. The judgment included a special condition on Ramos's supervised release

stating that he "must not frequent places where controlled substances are illegally sold, used, distributed or administered." R. 42, P. 135. Ramos did not object to this condition in the district court. Ramos now appeals both the application of the weapons enhancement and the imposition of the special condition.

## II. Firearm Enhancement

Ramos contends that the government did not meet its burden under the Guidelines for applying the firearm enhancement. We review "[t]he district court's interpretation of the Guidelines" de novo and its factual findings for clear error. *United States v. McCloud*, 935 F.3d 527, 530–31 (6th Cir. 2019) (quoting *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017)). "A district court's finding that a defendant possessed a firearm during a drug crime is a factual finding." *United States v. Bartholomew*, 310 F.3d 912, 924 (6th Cir. 2002) (quoting *United States v. Elder*, 90 F.3d 1110, 1133 (6th Cir. 1996)).

The United States Sentencing Guidelines § 2D1.1(b)(1) directs courts to impose a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed." The 1991 amendments to the Guidelines eliminated the requirement that the government prove that the weapon was possessed during the commission of the indicted offense. *United States v. Faison,* 339 F.3d 518, 520 (6th Cir. 2003); *compare* U.S.S.G. § 2D1.1(b)(1) (U.S. Sentencing Comm'n 2021) ("If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.") *with* U.S.S.G. § 2D1.1(b)(1) (U.S. Sentencing Comm'n 1990) ("If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels."). Despite the absence of this requirement, we have often continued to phrase the test as requiring the government to prove "(1) that the defendant 'possessed' the weapon, and (2) that such possession was during the commission of the offense." *McCloud*, 935 F.3d at 531; *see also United States v. Catalan*,

499 F.3d 604, 606 (6th Cir. 2007); *United States v. Johnson*, 344 F.3d 562, 565 (6th Cir. 2003). Regardless, we have stated definitively that since the change in the Guidelines, "all that the government need show is that the dangerous weapon be possessed during 'relevant conduct.'" *Faison*, 339 F.3d at 520; *United States v. Clisby*, 636 F. App'x 243, 247 (6th Cir. 2016); *see also United States v. Dixon*, 262 F. App'x 706, 711 (6th Cir. 2008) ("This Court has flatly rejected a requirement that the Government prove a connection between the firearm and the charged conduct."). Once the government establishes by a preponderance of the evidence possession of a weapon during relevant conduct, the burden shifts to the defendant to prove that "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A); *United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016).

Ramos does not argue that the government failed to establish "possession" of a weapon. Rather, Ramos argues under the old framework that the government failed to establish that possession of the firearms was in connection with the indicted offense. Because *Faison* and the 1991 amendments plainly foreclose this argument, we construe Ramos as arguing that the government did not establish that he possessed the firearms during conduct relevant to the charged offense.

Relevant conduct includes "all acts and omissions . . . that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2); *see United States v. Ward*, 506 F.3d 468, 475 (6th Cir. 2007) (referencing U.S.S.G. § 1B1.3 to determine what constitutes "relevant conduct" when applying the weapons enhancement under § 2D1.1(b)(1)).

Although relevant conduct can be a thorny inquiry, here it is straightforward. In his plea agreement, Ramos conceded the factual basis recited therein, which described the agents'

discovery of multiple firearms in his home along with large quantities of drugs and other items associated with drug trafficking. Critically, Ramos stipulated in the plea agreement that those facts constitute relevant conduct under § 1B1.3. R. 24, P. 72 ("Pursuant to U.S.S.G. § lB1.3, the Defendant's relevant conduct includes the facts set forth in paragraph 5 and all provided discovery materials."). So, Ramos acknowledged that he possessed firearms during relevant conduct.

But even if he had not made such an admission, the circumstances clearly demonstrate that Ramos possessed these weapons during relevant conduct. Agents found multiple firearms—including an assault-style weapon—in the same residence where they found a significant quantity of methamphetamine hanging from the basement rafters along with digital scales, heat sealers, body armor, and a money counting machine. They identified ammunition in the stash house for one of the other two firearms discovered in Ramos's car that day. Agents also located in the stash house a packing press, digital scales, cutting agents, and an even wider array of drugs. These facts establish that Ramos possessed dangerous weapons while he carried out the "course of conduct or common scheme" of drug trafficking. *Ward*, 506 F.3d at 475; *see also United States v. Finley*, 239 F. App'x 248, 254–55 (6th Cir. 2007) (holding that because guns and drugs were found in the same location—the home of the defendant—the court did not err in applying the § 2D1.1(b)(1) enhancement). Thus, these facts are sufficient to establish that the district court did not err in finding that the firearms were possessed during relevant conduct.

Ramos also argues in reply that even if the district court is correct that the government met its burden under the applicable test, it erred by instructing counsel on the wrong test and thereby prevented counsel from making an argument on the "clearly improbable" standard. But Ramos's attorney did argue that it was clearly improbable that the weapons were connected with the drug offense. He argued that, although there was significant surveillance of Ramos, there was never

any reference to weapons in those instances. When confronted with the fact that multiple firearms were found in the house where a significant quantity of methamphetamine was also stored, he posited that perhaps Ramos uses the guns to target shoot. But the court found that this hypothesis did not establish that it was clearly improbable that the weapons were connected with the drug offenses. Conversely, the court found that "[j]ust the opposite would seem to be the case." R. 54, P. 239. We agree. Given the significant quantity of drugs in the residence along with storage and packing materials, body armor, handguns, and an assault-type weapon, it is not clearly improbable that these weapons were possessed during the relevant drug-trafficking activities.

Therefore, we hold that the district court did not err in finding that a weapon was possessed during relevant conduct.

### III. Supervised Release Condition

Ramos also contends that the district court imposed a special condition of supervised release that was unconstitutionally vague. Ramos did not object to the condition in the district court. When a defendant fails to make a timely objection, we review the issue for plain error. Fed. R. Crim. P. 52(b); *United States v. Olano*, 507 U.S. 725, 732–37 (1993). To establish plain error, the appellant must show that there was, "(1) error (2) that was 'obvious or clear,' (3) that 'affected defendant's substantial rights' and (4) that 'affected the fairness, integrity, or public reputation of the judicial proceedings.'" *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (quoting *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006)). An error is "plain" when, at a minimum, it "is clear under current law." *Olano*, 507 U.S. at 734. "A 'circuit split precludes a finding of plain error.'" *United States v. Al-Maliki*, 787 F.3d 784, 794 (6th Cir. 2015) (quoting *United States v. Williams*, 53 F.3d 769, 772 (6th Cir. 1995). So does a "[a] lack of binding case law that answers the question presented." *Id.*

Ramos argues that one of the special conditions imposed on his term of supervised release is unconstitutionally vague because it lacks a mens rea requirement, thereby imposing strict liability. The condition states that Ramos "must not frequent places where controlled substances are illegally sold, used, distributed or administered." R. 42, P. 135. The government acknowledges that the condition does not contain an explicit mens rea requirement.

Even if we were to agree with Ramos that the district court erred by not including an express mens rea requirement, its error would not be plain because there is a circuit split and a lack of binding case law on this issue. *Al-Maliki*, 787 F.3d at 794; *see Vonner*, 516 F.3d at 387 ("[When] plain-error review gives us another, more straightforward way to handle this appeal, we need not address the first step of plain-error review: Did the court err?"). Indeed, we recently examined this very question and found no plain error. *United States v. De Leon*, 810 F. App'x 384, 388–89 (6th Cir. 2020). We reach the same conclusion here. Ramos relies on out-of-circuit precedent to support his argument and fails to identify any binding case law from this court that would have alerted the district court to its alleged error. And our sister circuits are split on whether a lack of a mens rea requirement dooms a condition like the one at issue here. *De Leon*, 810 F. App'x at 389 (acknowledging this split); *compare United States v. Kappes*, 782 F.3d 828, 849 (7th Cir. 2015) *with United States v. Munoz*, 812 F.3d 809, 822–23 (10th Cir. 2016) *and United States v. Phillips*, 704 F.3d 754, 768 (9th Cir. 2012). Ramos cannot demonstrate an *obvious* error, so his argument fails.

Ramos argues that, even if there is a circuit split or a lack of binding case law, he can still satisfy plain-error review. He relies on *United States v. Lantz*, an unpublished decision in which we held that, even in the absence of binding case law, a special condition plainly violated the First Amendment because it banned possession of all material that alluded to sexual activity. 443 F.

App'x 135, 141 (6th Cir. 2011). This condition would have encompassed "an enormous swath of literature, music, and other media," including "significant parts of the Old Testament." *Id.* "Given the mass of literation and other media such a condition would encompass, the error was clear and obvious; it affect[ed] substantial First Amendment rights to receive information and freely exercise religion; and it call[ed] into question the fairness of the proceedings because the severity of the restriction." *Id.* (internal citations omitted).

Ramos's supervised release condition is not so obviously wrong that we can ignore our published decision in *Al-Maliki* in favor of the unpublished *Lantz*. If anything, our case law indicates that Ramos's vagueness challenge would fail on the merits. *See United States v. Smith*, 695 F. App'x 854, 858 (6th Cir. 2017) (declining to read a similar condition as imposing strict liability); *De Leon*, 810 F. App'x at 388) (same in dicta). And the existence of a circuit split shows that his argument (unlike the argument in *Lantz*) is subject to "reasonable dispute." *Al-Maliki*, 787 F.3d at 794. Ramos's condition is a far cry from the obviously unconstitutional condition at issue in *Lantz* and there is no reason to depart from our binding-case-law requirement here. Accordingly, the district court did not plainly err in imposing the relevant supervised release condition.

## IV. Conclusion

For these reasons, we affirm the judgment of the district court.