NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0486n.06

No. 22-5968

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Nov 28, 2023
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
|  | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
|  | ) | COURT FOR THE EASTERN |
| JERMAINE MATTHEWS, | ) | DISTRICT OF KENTUCKY |
| Defendant-Appellant. | ) | |
|  | ) | OPINION |
|  | ) | |

Before: BUSH, LARSEN, and MURPHY, Circuit Judges.

LARSEN, Circuit Judge. Jermaine Matthews participated in a years-long conspiracy in which he transported drugs from Michigan and sold them in Kentucky. He pleaded guilty to conspiring to distribute heroin, fentanyl, and oxycodone. The district court sentenced Matthews to 64 months' imprisonment, followed by a three-year term of supervised release. He now appeals his sentence. For the reasons stated below, we AFFIRM in part, VACATE in part, and REMAND for the district court to amend the judgment.

I.

A federal grand jury indicted Jermaine Matthews and four codefendants on one count of conspiring to distribute drugs in violation of 21 U.S.C. §§ 841(a)(1) and 846. In his plea agreement, Matthews admitted that the government could prove beyond a reasonable doubt that, "[o]n or about 2017, the exact date unknown, and continuing through in or about March 2019,"

he "conspired with others to distribute" heroin, fentanyl, and oxycodone in the Eastern District of Kentucky. R. 150, PageID 353.

The Presentence Investigation Report (PSR) recommended enhancing Matthews' offense level under U.S.S.G. § 2D1.1(b)(1) based on the involvement of a firearm. The PSR also recommended that Matthews receive a criminal history point under U.S.S.G. § 4A1.2(c)(1) based on a prior sentence imposed for failure to present a valid driver's license. The district court adopted these recommendations over Matthews' objections. The court calculated a Guidelines range of 72 to 89 months' imprisonment. The court ultimately imposed a 64-month sentence, followed by a three-year term of supervised release. A special condition of the supervised release authorized warrantless searches based on reasonable suspicion of a probation violation.

Matthews timely appealed.

## II.

### A.

Matthews challenges the district court's calculation of his Guidelines range. We review the district court's interpretation of the Guidelines de novo. *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017). We defer to the district court's factual findings unless the court clearly erred. *United States v. Simmerman*, 850 F.3d 829, 832 (6th Cir. 2017).

*Firearm Enhancement.* Section 2D1.1(b)(1) of the Guidelines provides for a two-level enhancement "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the offense. U.S.S.G. § 2D1.1(b)(1). We use a burden-shifting framework to determine whether this enhancement applies. *United States v. Kennedy*, 65 F.4th 314, 318 (6th Cir. 2023). The government must prove by a preponderance of the evidence that the weapon was possessed during the commission of the offense. *United States v. McCloud*, 935 F.3d 527, 531

(6th Cir. 2019). If the government carries that burden, the defendant may avoid the enhancement by demonstrating that "it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 cmt. n.11(A); *McCloud*, 935 F.3d at 531. Matthews argues only that the district court erred in finding that the government carried its initial burden. So we do not address the "clearly improbable" prong.

The district court concluded that a co-conspirator's undisputed possession of a firearm constituted relevant conduct under U.S.S.G. § 1B1.3(a)(1)(B) and that this triggered application of the firearm enhancement to Matthews. The court based its factual findings primarily on testimony that Matthews had provided at the separate trial of co-conspirator Charles Edwards. As the court recounted, Matthews had testified that he first involved Edwards in the conspiracy when he invited Edwards to ride with him on his drug-distribution trips to Kentucky and that Edwards later introduced heroin distribution to their collaboration. Matthews' testimony established that during their travels Edwards had a firearm "all the time, had one on his person, had one on his lap, had one in his truck." R. 204, PageID 914. There was no doubt, the court explained, that Matthews was aware of Edwards' firearm possession.

Under § 1B1.3(a)(1)(B), "in the case of a jointly undertaken criminal activity," acts that occurred "during the commission of the offense" are relevant conduct for purposes of the Guidelines if they were: "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." U.S.S.G. § 1B1.3(a)(1)(B). The court found that these three elements were readily met. With respect to foreseeability, Matthews plainly knew that Edwards was constantly armed. And given the predictable dangers of long-distance drug trafficking—particularly when the traffickers are "going into a lot of remote places and meeting new people," as Matthews and

Edwards were—Edwards possessed the firearm in furtherance of the conspiracy. R. 204, PageID 916. In fact, at one point during the conspiracy, Edwards fired shots into the home of a person who had stolen drugs from him and later reported to Matthews that he had taken care of the issue. This established "a direct linkage between the fact that Edwards was armed and the activities of the conspiracy." *Id.* at 917; *see Kennedy*, 65 F.4th at 324 (explaining that there must be "some nexus" between the firearm and the "activities in pursuit of the conspiracy").

On appeal, Matthews does not contest the court's findings on the foreseeability and in-furtherance elements, but he argues that Edwards' possession of the firearm was not "within the scope of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B)(i). This term, we have recognized, "is not necessarily the same as the scope of the entire conspiracy." *United States v. Donadeo*, 910 F.3d 886, 894–95 (6th Cir. 2018) (quoting U.S.S.G. § 1B1.3 cmt. n.3(B)). Instead, "the court must first determine the scope of the criminal activity the particular defendant *agreed* to jointly undertake," taking account of "any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3 cmt. n.3(B) (emphasis added). Co-conspirators' acts that "were not within the scope of the defendant's agreement" do not count as relevant conduct. *Id.*

The district court's conclusion was consistent with these requirements. As the court found, over several years, Matthews and Edwards repeatedly "travel[ed] down [to Kentucky] with the sole purpose of distributing drugs, and [Edwards] [wa]s armed all the time, and [Matthews] [wa]s aware of it." R. 204, PageID 915. And Matthews continued in the joint criminal activity even after he learned that Edwards had used the firearm for conspiracy-related activities. These undisputed factual findings indicate coordination between Matthews and Edwards, knowledge by Matthews of Edwards' use of the firearm in furtherance of the conspiracy, and lengthy

participation by Matthews in the scheme. *See Donadeo*, 910 F.3d at 895–96 (describing factors for evaluating the scope of the joint activity to which the defendant agreed). The court explained that, when a co-conspirator "is showing up for partnership activity after partnership activity and is carrying a firearm," the "agreement begins to encompass it being an armed activity." R. 204, PageID 915–16. In the court's view, such was the case here. We see no error in the determination that Edwards' possession of a firearm during conspiracy-related activities was relevant conduct under § 1B1.3(a)(1)(B) and thus triggered the application of the firearm enhancement.

*Criminal History Point.* Under U.S.S.G. § 4A1.2(c)(1) and (e)(2), a prior sentence imposed for driving without a license (or a "similar" offense) must be counted in a defendant's criminal history calculation if the term of imprisonment lasted at least 30 days and if the sentence was imposed within ten years of the instant offense. A defendant receives one criminal history point for each qualifying prior sentence of less than 60 days' imprisonment. U.S.S.G. § 4A1.1(c).

For two reasons, Matthews disputes the addition of a criminal history point under these provisions of the Guidelines, which moved him into a criminal history category of V. He challenges the eligibility of a sentence he received in May 2007, and he contends that, even if that sentence may be used, the government did not show that the instant offense commenced within ten years of his 2007 sentence.

In April 2000, Matthews pleaded guilty in Michigan state court to "Failure to Display a Valid Operator's License—Not on Person" and was ordered to pay a fine and costs. R. 193, PageID 692. In May 2007, however, that conviction was set aside, the case was reopened, and Matthews again pleaded guilty, this time receiving a sentence of 30 days' imprisonment, with credit for time served on a separate sentence. The PSR identified the May 2007 sentence as scorable, and the district court adopted that view over Matthews' objection. Matthews' attorney

suggested at the sentencing hearing that the state court improperly reopened and re-adjudicated the case without Matthews present: according to his attorney, Matthews was serving another prison sentence at the time and did not appear for any such proceeding in May 2007. But Matthews makes clear that he does not seek to collaterally attack his state court conviction in this federal sentencing proceeding. And he does not contest as a factual matter that the state court records reflect that he was convicted in May 2007 and sentenced to 30 days' imprisonment. Nor has Matthews presented any evidence that his April 2000 sentence was conditional or that his May 2007 sentence has ever been deemed invalid. The district court was therefore entitled to rely on this undisputed information in the PSR. "A state criminal judgment that has not been set aside . . . is 'presumptively valid and may be used'" in a federal sentencing proceeding. *United States v. Salamanca*, 821 F. App'x 584, 586 (6th Cir. 2020) (quoting *Daniels v. United States*, 532 U.S. 374, 382 (2001)).

Matthews also fails to show that the district court erred in finding that the charged conspiracy began before May 2017—and thus within ten years of the imposition of the May 2007 sentence. In his plea agreement, Matthews admitted only that the government could prove beyond a reasonable doubt that he conspired to distribute drugs "[o]n or about 2017, the exact date unknown, and continuing through" around March 2019. R. 150, PageID 353. And law enforcement first learned of Matthews' activity in the summer of 2017. But the court explained that there was no reason to think that this marked the beginning of that criminal activity. In the Edwards trial, Matthews himself had testified that he started selling drugs in Kentucky in 2014, that Edwards later joined him, and that they began selling heroin in 2015 or 2016 at Edwards' suggestion. Thus, the conspiracy was "[i]narguably" "running strong" in 2015 and 2016. R. 204, PageID 907. The court also found corroborative value in social media screenshots taken by a law

enforcement agent who testified at Matthews' sentencing, including screenshots of a video that Edwards took while he was driving down the road to two co-conspirators' house in the Eastern District of Kentucky in November 2016. Edwards' relationship with those individuals only "exist[ed] to sell drugs." *Id.* Matthews does not dispute the factual accuracy of any of these points. He simply contends that this evidence was inadequate, or not specific enough, to support the district court's finding. We disagree. Matthews' own admissions as to the development of the conspiracy were sufficient to support the court's finding that the offense commenced well before the summer of 2017.

In short, the district court did not err in adding one criminal history point for the sentence imposed in May 2007.

B.

Both the government and Matthews agree that the district court's judgment erroneously expanded the special search condition that the court had announced at the sentencing hearing.

"Because criminal punishment affects the most fundamental human rights[,] sentencing should be conducted with the judge and defendant facing one another and not in secret." *United States v. Denny*, 653 F.3d 415, 421 (6th Cir. 2011) (quoting *United States v. Penson*, 526 F.3d 331, 334 (6th Cir. 2008)). For that reason, when there is a conflict between the oral and written pronouncements of a sentence, the oral sentence controls. *United States v. Booker*, 994 F.3d 591, 600 (6th Cir. 2021).

At the hearing, the court described the search condition this way:

> What this is going to do, Mr. Matthews, is give probation the power to search you without a warrant but only if it reasonably suspects that you violated. So if the office suspects reasonably a violation of any of the rules, it can search you relating to that suspicion.

-7-

R. 204, PageID 990. The government agrees with Matthews that this pronouncement declares only a right to search Matthews' person without a warrant. But the judgment expanded this special condition to apply to Matthews' "person, house, residence, office, vehicle, papers, computers," and other electronic devices. R. 192, PageID 678. In light of the government's concession, we remand the case to allow the district court to conform the judgment to the sentence announced at the sentencing hearing. *See United States v. Jefferson*, No. 22-1306, 2023 WL 2378510, at *4 (6th Cir. Mar. 7, 2023).

* * *

The judgment is AFFIRMED in part and VACATED in part. The case is REMANDED for the district court to amend the judgment consistent with this opinion.