RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee*,

    *v.*

LAMONTE H. BROWN,

        *Defendant-Appellant*.

No. 23-5610

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:21-cr-00075-2—Danny C. Reeves, District Judge.

Decided and Filed:  March 6, 2025

Before:  THAPAR, BUSH, and MURPHY, Circuit Judges.

───────────────

## COUNSEL

───────────────

**ON BRIEF:**  John F. Clark, CLARK LAW FIRM PLLC, Detroit, Michigan, for Appellant. John Patrick Grant, Charles P. Wisdom, Jr., UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

## OPINION

───────────────

THAPAR, Circuit Judge.  Lamonte Brown pled guilty to two separate charges: conspiring to distribute methamphetamine and being a felon in possession of a firearm.  He now appeals various aspects of his sentence.  We affirm.

I.

In the spring of 2021, the Lexington Police Department investigated a large-scale methamphetamine distribution scheme. A cooperating source told police that Lamonte Brown was involved in the organization, so they started surveilling him.

On May 11, the police observed an individual climb into Brown's car and leave with a bag. The police later stopped that individual (named Tiquan Anderson) and uncovered 467.6 grams of methamphetamine, a digital scale, $2,000 in cash, and suspected fentanyl, cocaine, and marijuana. Anderson pointed the finger at Brown and Brown's associate, William Hargis.

Anderson clued the police in on where Brown and Hargis ran their drug operations—an office building on Alysheba Way. That's where Brown and Hargis stored, packaged, and cut drugs to prepare them for sale. How did Anderson know? He had been there just the week before, had seen drugs stored in the ceiling, and had watched Brown and Hargis package drugs.

After the police conducted further surveillance at the Alysheba office, they sprang into action, executing a search warrant at the office. That search yielded 25.15 kilograms of methamphetamine, 879.8 grams of fentanyl, what looked like counterfeit Xanax tablets, firearms, ammunition, explosive devices, several presses (used for making pills), digital scales and blenders smeared with drugs, cutting agents, and packaging materials.

About a month later, Lexington police arrested Brown for drug trafficking. Meanwhile, the police had eyes on Brown's house. They watched as a woman left the house and put a bag in Brown's car. After learning that the bag contained marijuana, the police searched the trunk of the car and saw the barrel of a gun. Then they searched the car and discovered more loaded firearms. Brown had prior felony convictions, so his possession of the firearms was prohibited. *See* 18 U.S.C. § 922(g)(1).

Federal authorities picked up where the Lexington police left off. They charged Brown with conspiring to knowingly and intentionally possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. And, in a separate indictment, the government indicted Brown for being a felon in possession of a firearm, in violation of 18 U.S.C.

§ 922(g).  Brown pled guilty in both cases.  The two cases were consolidated for sentencing, and Brown received a 310-month sentence.  Brown now appeals several aspects of his sentence.

## II.

First, Brown objects to the application of a two-level sentencing enhancement for possessing a dangerous weapon under U.S.S.G. § 2D1.1(b)(1).  This enhancement was based on the guns found in the Alysheba office—which belonged to Brown's co-conspirator, Hargis.  Brown argues that he couldn't reasonably foresee that Hargis possessed these guns.

## A.

We review the district court's interpretations of the Guidelines de novo and its factual findings for clear error.  *United States v. Schock*, 862 F.3d 563, 566–67 (6th Cir. 2017).  But for mixed questions of law and fact—like the application of the Guidelines to the facts—the standard of review varies.  "Mixed questions are not all alike."  *U.S. Bank Nat'l Ass'n ex rel. CWCapital Asset Mgmt. LLC v. Vill. at Lakeridge, LLC*, 583 U.S. 387, 395–96 (2018).  That holds true here.  So we walk through the applicable standard of review step by step.

The enhancement under § 2D1.1(b)(1) has two elements.  The government must show, by a preponderance of the evidence, that (1) the defendant actually or constructively possessed the weapon, and (2) the weapon was possessed during "relevant conduct" to the offense.  *United States v. West*, 962 F.3d 183, 187 (6th Cir. 2020) (citation omitted).  When the government attempts to apply this enhancement based on the conduct of a co-conspirator, it must meet a few additional hurdles.  Namely, the government must establish that the dangerous weapon possession was within the scope of the jointly undertaken criminal activity; in furtherance of that criminal activity; and reasonably foreseeable in connection with that criminal activity.  U.S.S.G. § 1B1.3(a)(1)(B)(i)–(iii).

The standard of review differs for these respective elements.  Element one—actual or constructive possession—is reviewed for clear error.  *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019).  Element two—whether the dangerous weapon was possessed during "relevant conduct" to the offense—is reviewed de novo.  *United States v. Amerson*, 886 F.3d 568, 573 (6th Cir. 2018).  But when the relevant conduct determination depends on co-

conspirator liability (like in this case), factual findings about the conspiracy are reviewed for clear error. *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018); *United States v. Barron*, 940 F.3d 903, 912 (6th Cir. 2019).

B.

Brown doesn't dispute that Hargis possessed the guns, so element one is off the table. And while Brown claims the mantle of de novo review under element two, the heart of his argument is that he couldn't have reasonably foreseen that Hargis had guns.[1]  That claim faces, and fails, our clear error review.

At sentencing, the government produced various pieces of evidence to meet its burden. For one, it called a detective to testify about the results of the search of the Alysheba office.  The government also produced body-camera footage of the detective's search.  The detective relayed his discovery of the firearms, some of the drugs, and additional drug paraphernalia in the bathroom and closet.  He confirmed that Brown's fingerprints were found nearby on a press that turned narcotics into pills.  The government also explained that several witnesses said it was well-known that Hargis carried guns.  Finally, the government highlighted the size of the drug stash.  The methamphetamine found was worth half a million dollars (when sold as a unit) and over a million dollars (when sold by the gram).

The district court found that this evidence sufficed to show that Brown could've reasonably foreseen Hargis's possession of a firearm.  In particular, the district court relied on the "massive amount of drugs" recovered nearby to infer that firearms were reasonably foreseeable. R. 211, Pg. ID 1117.  Brown knew about these vast quantities of methamphetamine. After all, Brown admitted to his part in the conspiracy, and even specifically admitted to the amounts of methamphetamine involved.

---

[1]Section 1B1.3(a) also requires co-conspirator conduct to be "within the scope of the jointly undertaken criminal activity."  U.S.S.G. § 1B1.3(a)(1)(B)(i).  In his summary of the argument, Brown asserts that the gun possession wasn't "within the scope of [his] agreement with" Hargis. Appellant Br. at 20; *see id.* at 25 n.4, 27 (referencing U.S.S.G. § 1B1.3 app. n.3(B)).  But he offers no argument in support of this claim.  Thus, Brown has forfeited appellate review of the "scope" issue. *Walden v. Gen. Elec. Int'l, Inc.*, 119 F.4th 1049, 1057 n.3 (6th Cir. 2024).  What's more, Brown didn't make this argument in either his written objections to the PSR or at the sentencing hearing.  So, even if Brown did properly make an argument on appeal, our review would be for plain error.

Brown makes two arguments in response. First, he tries to argue that the presence of a co-conspirator's gun wasn't "reasonably foreseeable" under our caselaw. To be sure, we've held that mere participation in a drug conspiracy doesn't make a co-conspirator's firearm possession reasonably foreseeable. *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994). But as the district court recognized, we've repeatedly affirmed that such possession is foreseeable "when there are massive amounts of drugs in a single location." *United States v. Woods*, 604 F.3d 286, 291 (6th Cir. 2010) (collecting cases); *see Barron*, 940 F.3d at 912–13 (affirming inference for 200,000 dollars' worth of cocaine); *United States v. Catalan*, 499 F.3d 604, 607 (6th Cir. 2007) (affirming inference for 20,000 dollars' worth of cocaine). That's because when there are large quantities of drugs involved, a conspirator "would expect others to be carrying protection." *United States v. Wade*, 318 F.3d 698, 702 (6th Cir. 2003). The district court's conclusion—based on the half-million to a million dollars' worth of methamphetamine discovered—aligned with this caselaw.

Second, Brown argues that the government didn't put forth evidence that he, as opposed to other witnesses, knew that Hargis carried weapons. But all the government had to show was that it was "reasonably foreseeable" to Brown that Hargis had a weapon. *Woods*, 604 F.3d at 290. And if something was well-known to others, that makes it more likely that Brown would have foreseen that Hargis possessed the firearms.

\* \* \*

The district court didn't clearly err by crediting the government's evidence. *Barron*, 940 F.3d at 912. And it didn't clearly err by drawing an inference (that our caselaw has blessed) based on Brown's undisputed involvement with a large-scale methamphetamine trafficking operation.

## III.

Brown's next set of challenges relates to the third addendum to his presentence investigation report (PSR). Brown brings two objections: one procedural, one substantive.

A.

*Procedural*.  The probation officer filed the third addendum—recommending that Brown receive one additional criminal history point for the § 922(g) charge—one day before the scheduled joint sentencing hearing.  *See* U.S.S.G. §§ 4A1.1(c), 4A1.2(a)(4).  At the hearing, Brown's lawyer objected to this "unexpected" addition.  R. 232, Pg. ID 1248.  Brown's lawyer expressed his willingness to "object orally" or to file a written memorandum.  *Id.*  In response, the court pushed the hearing back two weeks.

On appeal, Brown argues that this late disclosure violated Rule 32(g), which requires the probation officer to submit the PSR and addenda "[a]t least 7 days before sentencing."  Fed. R. Crim. P. 32(g).  District courts "must be in 'literal compliance'" with this rule.  *United States v. Roberge*, 565 F.3d 1005, 1011 (6th Cir. 2009) (citation omitted).

Brown's challenge fails for a simple reason:  the district court postponed the sentencing hearing by two weeks.  So, Brown had ample time—more than the seven days Rule 32(g) requires—to consider the third addendum and file a written objection.  In fact, Brown's objection to the late addendum was why the district court granted a continuance.  *See Irizarry v. United States*, 553 U.S. 708, 715–16 (2008) (describing a continuance as "[t]he more appropriate response" to a party's complaint about a last-minute surprise in the context of a Rule 32(h) challenge).  The third addendum was filed on June 1 and the rescheduled sentencing hearing took place on June 16.  Thus, the court complied with Rule 32.  *Roberge*, 565 F.3d at 1011.

B.

*Substantive*.  Brown also insists that the felon-in-possession charge was relevant conduct to the drug conspiracy—and thus couldn't factor into his criminal history.  He is correct that conduct forming part of the drug conspiracy can't be used as a "prior sentence" for his criminal history calculation on that same offense.  But he's wrong that the § 922(g) offense was part of the drug conspiracy.

1.

Starting with the Guidelines:  they give a defendant one criminal history point when he "has been convicted of an offense, but not yet sentenced . . . as if it constituted a prior sentence under § 4A1.1(c)."  U.S.S.G. § 4A1.2(a)(4); *see id.* § 4A1.1(c).  A "prior sentence," in turn, means "any sentence previously imposed upon adjudication of guilt . . . *for conduct not part of the instant offense*."  *Id.* § 4A1.2(a)(1) (emphasis added).

How do we determine whether the conduct is part of the instant offense?  We assess whether the conduct "is severable into two distinct offenses."  *United States v. Beddow*, 957 F.2d 1330, 1338 (6th Cir. 1992).  This is a "fact-specific inquiry" that "involves more than just a consideration of the elements of the two offenses."  *United States v. Messer*, 71 F.4th 452, 459 (6th Cir. 2023) (quoting *Beddow*, 957 F.2d at 1338).  We consider factors like "the temporal and geographical proximity of the two offenses, common victims, and a common criminal plan or intent."  *Beddow*, 957 F.2d at 1338; *see United States v. Young*, 310 F. App'x 784, 798–99 (6th Cir. 2009) (applying the *Beddow* factors).  Finally, we review the district court's factual findings for clear error.  *Messer*, 71 F.4th at 459.

2.

Looking at the two offenses' elements, proximity, common victims, and common criminal plan or intent yields a straightforward conclusion.  Brown's felon-in-possession offense wasn't a part of the methamphetamine conspiracy.

First, those crimes don't share any elements in common.  *Compare* 18 U.S.C. § 922(g)(1) *with* 21 U.S.C. § 846; *see United States v. Escobar*, 992 F.2d 87, 89 (6th Cir. 1993) (noting that the commission of one offense didn't need to be proven as an element of the other offense).  And Brown had co-defendants in the drug conspiracy, but none in the felon-in-possession case.  *See Flores v. United States*, No. 16-1766, 2017 WL 11350680, at *2 (6th Cir. Feb. 8, 2017) (order) (affirming a finding that two offenses were distinct when they involved "different sets of co-conspirators").

Geographical and temporal proximity don't change that calculus.  The guns were stashed in a car outside Brown's house; the drugs were ensconced in the ceiling of the Alysheba office.

And as charged, the drug conspiracy spanned roughly eight months—from October 2020 to May 2021. The felon-in-possession offense, meanwhile, took place "[o]n or about June 28, 2021." R. 1, Pg. ID 1, *United States v. Brown*, Case 5:22-cr-00057-DCR-MAS ("*Brown § 922(g)*").

And, to the extent that Brown's offenses did overlap in time, that doesn't change the conclusion. For example, in *Escobar*, a defendant faced a sentence for a three-year-long conspiracy to distribute cocaine. 992 F.2d at 88. There, the district court found that a defendant's state conviction for *possessing* small amounts of cocaine, which took place during the distribution conspiracy, properly counted as criminal history instead of relevant conduct. *Id.* at 89–90. We affirmed. *Id.* at 88.

Likewise, in *Messer*, the defendant had multiple convictions: one for kidnapping, one for conspiracy to distribute controlled substances. 71 F.4th at 458–59. The kidnapping overlapped geographically and temporally with the defendant's drug conspiracy. *Id.* at 459. The kidnapping even arose out of a "failed drug buy." *Id.* The defendant wanted the drug conspiracy to count as relevant conduct, a view we found "plausible." *Id.* But the district court saw things differently. That court relied on the fact that the kidnapping involved a different drug supplier than the drug conspiracy generally and that the kidnapping produced different harms. *Id.* The court's decision to count the conspiracy as a prior sentence—not relevant conduct—wasn't clearly erroneous. *Id.*

Next, Brown's felon-in-possession offense and the methamphetamine conspiracy didn't share any victims in common. In *United States v. Tilford*, the police arrested Tilford for drug distribution. 85 F. App'x 516, 518 (6th Cir. 2004). When doing so, they found several firearms that Tilford unlawfully possessed. *Id.* Tilford, like Brown, argued that his firearm offense was part of his drug offense. But we concluded that the crimes of aiding and abetting a drug offense and possessing an illegal weapon involved "different criminal conduct that harmed different societal interests." *Id.* at 520 (citation omitted). So too here.

Finally, Brown doesn't put forth any evidence that the two crimes were part of a common scheme or plan. *See* R. 199, Pg. ID 1021 ("There were no facts that connected the [methamphetamine conspiracy] offense conduct of May 11, 2021, with the [gun] offense conduct of June 28, 2021."); *United States v. Hicks*, 4 F.3d 1358, 1362 (6th Cir. 1993) ("No evidence was

ever offered that defendant used the gun . . . in relation to his drug trafficking activities."). Speculation is not a proper substitute for such evidence. In sum, the district court's decision to treat the felon-in-possession offense as a distinct prior sentence as opposed to relevant conduct wasn't wrong—let alone clearly erroneous. *Messer*, 71 F.4th at 459.**2**

3.

Brown makes two arguments in response: (1) the arrests for both offenses took place on the same day and (2) the government called the two offenses related. Thus, he says, the felon-in-possession offense must be relevant conduct to the methamphetamine conspiracy.

As for (1), it's true that the police only found Brown's firearms because they arrested him for the drug conspiracy. But that doesn't render the two offenses "relevant conduct." Otherwise, any time the police discovered evidence of a new crime when arresting someone, it would be "relevant conduct"—even if the offenses had nothing to do with each other. That is why neither the Guidelines nor our precedent impose a "same day arrest" rule. *See Tilford*, 85 F. App'x at 518 (illicit firearm possession discovered when arresting the defendant for drug charges wasn't relevant conduct); *Hicks*, 4 F.3d at 1362 (cocaine possession discovered when arresting defendant for assault wasn't relevant conduct to federal weapons charge).

And as for (2), it's also true that the government described the felon-in-possession and methamphetamine conspiracy cases as "related." *Brown* § 922(g), R. 3, Pg, ID 8 ("Notice by United States Regarding Related Prosecutions"). But this notice made no mention of "relevant conduct" or any Guidelines provisions at all. Fairly read, then, the notice doesn't concede that one offense is "relevant conduct" to the other for sentencing purposes. In fact, the Guidelines themselves previously differentiated between "related cases" and "relevant conduct." *Compare*

---

**2**The parties frame the inquiry differently. For his part, Brown argues that the guns were part of the "same course of conduct" as the methamphetamine conspiracy. Appellant Br. at 36 (citation omitted); *see* U.S.S.G. § 1B1.3(a)(2); *id.* § 4A1.2(a)(1) cmt. n.1. An offense is part of the "same course of conduct" depending on "the degree of similarity of the offenses, the regularity (repetitions) of the offenses, and the time interval between the offenses." U.S.S.G. § 1B1.3(a)(2) cmt. n.5(B); *United States v. Hill*, 79 F.3d 1477, 1481 (6th Cir. 1996). These factors overlap with our analysis above. "Similarity" is the flipside of asking whether the conduct constitutes "two distinct offenses." *Beddow*, 957 F.2d at 1338. And the "regularity" and "time interval" factors come out the same way as temporal proximity did.

U.S.S.G. § 4A1.2(a)(2) (2001) *with id.* § 1B1.3; *United States v. Garcia-Rodriguez*, 718 F. App'x 322, 324 n.2 (6th Cir. 2017).

Brown's unlawful possession of firearms wasn't relevant conduct to his involvement in the methamphetamine conspiracy. It wasn't "part of the instant offense." U.S.S.G. § 4A1.2(a)(1). Thus, the district court didn't err by counting the § 922(g) charge as part of Brown's criminal history.[3]

\* \* \*

It might seem odd to conclude that Hargis's possession of guns qualifies as relevant conduct, but that Brown's own gun possession doesn't. After all, if large quantities of drugs support an inference that it was reasonably foreseeable that a co-conspirator carried guns, why shouldn't they support an inference that Brown's own firearms were part and parcel of the drug operation—as opposed to being "conduct not part of the instant offense"?

The key is proximity. Our Section 2D1.1(b)(1) analysis above doesn't rest on a "generalized presumption that drug transactions involve guns." *Wade*, 318 F.3d at 702. It hinges on a connection between large amounts of drugs and guns found nearby, as the district court recognized. *See Woods*, 604 F.3d at 291 (describing properly applied enhancement in cases where "narcotics worth at least $60,000 [were] located near the firearm"); R. 211, Pg. ID 1117 (quoting that portion of *Woods*); *United States v. Benson*, 591 F.3d 491, 505 (6th Cir. 2010) (defendant could've reasonably foreseen that co-conspirator "possessed weapons in the residence where he kept a significant drug supply"); *cf.* U.S.S.G. § 2D1.1(b)(1) cmt. n.11(A) ("The enhancement should be applied if the weapon *was present*.") (emphasis added).

Hargis's firearms were found in the Alysheba office, near drugs and a pill press with Brown's fingerprints on them. By contrast, Brown's guns weren't found at the drug operation headquarters. They were found elsewhere, in a car outside Brown's house, over a month after the drug conspiracy ended. And again, "[t]here were no facts that connected the

---

[3]It doesn't matter that the § 922(g) offense occurred after the methamphetamine conspiracy. It's "the chronology of sentencing rather than the commission of the crimes [that's] controlling." *Beddow*, 957 F.2d at 1337 (citation omitted). So, since the district court sentenced Brown for the § 922(g) charge before the methamphetamine conspiracy, it was proper to count the gun charge as a prior sentence.

[methamphetamine conspiracy] offense conduct of May 11, 2021, with the [gun] offense conduct of June 28, 2021." R. 199, Pg. ID 1021.

IV.

Finally, Brown argues that the district court inadequately explained its decision to run his drug and gun sentences consecutively. Brown didn't raise this objection below, so we review for plain error. *United States v. King*, 914 F.3d 1021, 1024 (6th Cir. 2019). The district court didn't err.

District courts have the discretion to run most sentences concurrently or consecutively. 18 U.S.C. § 3584(a). When doing so, they must consider the § 3553(a) factors. *Id.* § 3584(b). But district courts already look to the § 3553(a) factors to determine a sentence's length. We don't make them repeat the § 3553(a) analysis when deciding to impose a consecutive sentence. *United States v. Morris*, 71 F.4th 475, 483 (6th Cir. 2023). That would be "repetitious and unwarranted." *King*, 914 F.3d at 1026 (citation omitted). Instead, a district court must "make[] generally clear [its] rationale" for imposing a consecutive sentence. *Morris*, 71 F.4th at 483 (citation omitted). And the court is free to "intertwine[]" its "discussion of the length of [the defendant's] sentence" with its "determination that the terms of imprisonment should run consecutively." *King*, 914 F.3d at 1026 (citation omitted); *see United States v. Duncan*, No. 22-5370, 2023 WL 5447338, at *4 (6th Cir. Aug. 24, 2023).

With that framework in mind, consider what the district court did at Brown's sentencing hearing. First, the court ran through the § 3553(a) factors with respect to the felon-in-possession case. Brown received a 48-month sentence for that offense, two months from the bottom of his Guidelines range. And when imposing this sentence, the court explained that it would run consecutively to any penalty imposed for the drug conspiracy case. "Otherwise," the 48-month sentence would "not provide sufficient punishment" for Brown's "separate criminal conduct." R. 211, Pg. ID 1094; *see* 18 U.S.C. § 3553(a); U.S.S.G. § 5G1.2(d).

Then the court ran through the § 3553(a) factors for the drug conspiracy case, emphasizing that this "very serious" case was "one of the largest cases in terms of crystal methamphetamine that's come before this Court." R. 211, Pg. ID 1145, 1142. The court

imposed a 262-month sentence for that offense, which again fell at the bottom of Brown's Guidelines range. The court didn't re-justify why it ran the gun and drug sentences consecutively. But it reaffirmed its consecutive decision several times.**4**

The district court satisfied its burden of explanation here. It considered the § 3553(a) factors for both offenses. And the court provided a rationale for why it chose to impose the sentences consecutively: to provide "sufficient punishment" for two "separate" criminal offenses. *Id.* at Pg. ID 1094; *see United States v. Gaskin*, 587 F. App'x 290, 298 (6th Cir. 2014) (conclusion that "consecutive sentences were necessary to impose a sentence that adequately addressed the offense" was "a reasonable conclusion, adequately explained"). Plus, it made its consecutive-versus-concurrent decision alongside its § 3553(a) analysis. Our precedent requires no more.

Brown, for his part, insists that the district court only explained its decision to run the felon-in-possession charge consecutive to the drug conspiracy charge. So, says Brown, the district court never explained why it ran the drug conspiracy charge consecutive to the felon-in-possession charge. Brown's argument rests on a flawed premise: that there were two distinct decisions to run the sentences consecutively. There weren't. Running X consecutive to Y is the same as running Y consecutive to X. And district courts don't need to repeatedly run through the same factors to justify the same sentencing decision.

The district court didn't err, let alone plainly so.

\*       \*       \*

We affirm.

---

**4**When imposing a bottom-of-the-Guidelines sentence on the drug charge, the district court hastened to add, "[h]owever, I will run this sentence consecutive to the sentence that was imposed for the separate criminal conduct in Lexington case 22-cr-57." R. 211, Pg. ID 1146. This context suggests that the district court's sentencing decisions—both as to the sentences' length and as to their consecutive nature—were intertwined.