NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0297n.06

Case No. 24-5814

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jun 13, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| ZACQUON D. GRADY, | ) | |
|     Defendant-Appellant. | ) | O P I N I O N |
| | ) | |

Before: McKEAGUE, MURPHY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Zacquon Grady challenges the procedural and substantive reasonableness of the 84-month prison sentence he received after pleading guilty to being a felon in possession of a firearm. Specifically, Grady asserts that the district court improperly applied a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) based on Grady's use or possession of the firearm in relation to another felony offense—namely, aggravated assault against his girlfriend, Itosha Rucker. Grady contends that the district court accepted unreliable evidence to support application of the enhancement, improperly found that the alleged aggravated assault was relevant conduct, and gave undue weight to certain sentencing factors while failing to sufficiently consider others. We AFFIRM.

**I.**

In August 2022, Metropolitan Nashville Police Department officers responded to a domestic violence report involving Grady and his longtime girlfriend, Itosha Rucker. When the officers arrived at the residence, both Grady and Rucker were present. Rucker described how Grady had assaulted her the night before. She reported that Grady had punched her during an argument, and as captured on one officer's body-worn camera ("bodycam"), she had visible injuries on her face, arms, and forehead from the encounter. The officers arrested Grady on outstanding warrants and spoke further with Rucker.

To assess the threat level, officers conducted a lethality interview with Rucker, which was also recorded on bodycam. During this interview, Rucker explained that Grady had "pistol-whipped" her "a couple weeks ago." She escorted officers inside the home and directed them to the location of Rucker's handgun inside a nightstand drawer. The officers retrieved a loaded SCCY-CPX-2 9mm pistol from the top drawer of the nightstand.

At the time, Grady had multiple felony convictions as well as a documented history of committing domestic violence offenses against Rucker. A federal grand jury indicted Grady on two counts: (1) felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1); and (2) possession of a firearm following a misdemeanor domestic violence conviction, in violation of 18 U.S.C. § 922(g)(9). Grady pleaded guilty to the first count. And the government dismissed the second count.

In preparation for sentencing, the probation department prepared a Presentence Investigation Report ("PSR"). The PSR recommended a four-level enhancement pursuant to U.S.S.G. § 2K2.1(b)(6)(B). According to the PSR, this enhancement was warranted because Grady had used or possessed the firearm "in connection with another felony offense." The

purported other offense—premised on Rucker's report of Grady pistol-whipping her—was aggravated assault, as defined under Tennessee law. But Grady objected to Rucker's statement that he pistol-whipped her. He also argued that the government failed to prove that the firearm listed in the offense of conviction was the same firearm Rucker alleged he used weeks earlier. Grady did not challenge the PSR's accuracy about his earlier convictions for domestic abuse against Rucker.

At sentencing, the government introduced the police bodycam footage of their interview with Rucker. This recording contained Rucker's full statement, including details about the pistol-whipping incident. The government emphasized that Rucker gave the statement voluntarily, immediately following a separate physical altercation, and that she had no apparent incentive to fabricate. After the court played the pertinent excerpt from the recording, Grady took the stand to testify. On direct examination, Grady flatly denied that he had pistol-whipped Rucker. Then on cross-examination, he refused to answer any questions about his past convictions for violence against Rucker or whether he previously struck Rucker. Instead, he invoked his Fifth Amendment right at each turn. So although Grady denied the specific conduct in question, he did not address the pattern of behavior that Rucker's statement and facts in the PSR both described. Meanwhile, he reiterated objections to the enhancement, citing a lack of corroborating physical evidence, the absence of a police report, and the government's failure to produce Rucker for live testimony.

Grady also sought a downward variance based on 18 U.S.C. § 3553(a) sentencing factors. For instance, in terms of his history and characteristics, he described experiencing a traumatic upbringing that featured, among other things, incidents of sexual and physical abuse. He also suffered a gunshot wound and witnessed several shootings throughout his childhood. Grady explained that these experiences created a persistent sense of fear that motivated him to keep a

firearm for protection. He asserted that his "possession was nonviolent and not in relation to any other criminal conduct." And he argued that one of his prior convictions, which had added three criminal history points to his score, occurred in his youth and led to an overstatement of his criminal history.

Convinced by the government's evidence concerning Grady's possession of the firearm in relation to Rucker's pistol-whipping, the district court applied § 2K2.1(b)(6)(B)'s four-level enhancement. It found that Rucker's statement to police, buttressed by other facts set forth in the PSR, provided reliable evidence in support of the enhancement, and that Grady's testimony failed to overcome it. The district court also concluded that Grady's offense was a "mine-run case for gun possession," so no variance was warranted. After so concluding, the district court sentenced Grady to a bottom-of-the-Guidelines sentence of 84 months' imprisonment and three years of supervised release. Grady now appeals.

**II.**

*Standard of Review and Applicable Law.* Grady challenges both the procedural and substantive reasonableness of his sentence. His attack on the district court's application of the Sentencing Guidelines is a question of procedural reasonableness. *See United States v. Seymour*, 739 F.3d 923, 929 (6th Cir. 2014). And his assertion that the district court gave inadequate consideration to some statutory sentencing factors while affording outsized consideration to others is a matter of substantive reasonableness. *See United States v. Gardner*, 32 F.4th 504, 530 (6th Cir. 2022).

We generally review all sentencing reasonableness questions for abuse of discretion. *Peugh v. United States*, 569 U.S. 530, 537 (2013). Under that standard, we typically review a district court's factual findings for clear error and its legal conclusions de novo. *United States v.*

*Battaglia*, 624 F.3d 348, 351 (6th Cir. 2010). However, we have recognized that "for mixed questions of law and fact—like the application of the Guidelines to the facts—the standard of review varies." *United States v. Brown*, 131 F.4th 337, 343 (6th Cir. 2025), *reh'g denied*, No. 23-5610, 2025 WL 1166546 (6th Cir. Apr. 8, 2025). As relevant here, we have not set a uniform standard of review for a district court's determination about whether an activity qualifies as relevant conduct under § 2K2.1(b)(6)(B). *See United States v. Shafer*, 199 F.3d 826, 830 (6th Cir. 1999); *see also United States v. Granado*, No. 23-1171, 2024 WL 731128, at *2 (6th Cir. Feb. 22, 2024), *cert. denied*, 144 S. Ct. 2592, 219 L. Ed. 2d 1246 (2024). But we need not resolve the standard question here, as applying de novo review or according the district court's determination due deference reaches the same result on this record. That is, the district court properly applied the enhancement to Grady's Guidelines-calculation.

### A. Procedural Reasonableness

"Procedural error occurs when the district court 'fail[s] to calculate (or improperly calculat[es]) the Guidelines range, treat[s] the Guidelines as mandatory, fail[s] to consider the § 3553(a) factors, select[s] a sentence based on clearly erroneous facts, or fail[s] to adequately explain the chosen sentence.'" *United States v. Gates*, 48 F.4th 463, 469 (6th Cir. 2022) (italics omitted) (quoting *United States v. Fowler*, 819 F.3d 298, 304 (6th Cir. 2016)); *see also Gall v. United States*, 552 U.S. 38, 51 (2007). Conversely, "a sentence is procedurally reasonable where the trial court follows proper procedures and gives adequate consideration to [the § 3553(a)] factors." *United States v. Perez-Rodriguez*, 960 F.3d 748, 753 (6th Cir. 2020) (alteration in original) (internal quotation marks and citation omitted).

As noted, U.S.S.G. § 2K2.1(b)(6)(B) applies where a defendant uses or possesses a firearm "in connection with another felony offense." Grady contends that the district court misapplied this

guideline in two different ways. First, Grady argues that the district court improperly relied on Rucker's statements which, according to Grady, did not satisfy the standard for reliability. Second, Grady asserts that the district court did not conduct a "full and proper analysis under U.S.S.G. § 2K2.1(b)(6)(B)." (ECF 14, Appellant's Br., 10). Neither argument passes muster.

1.  *Application of U.S.S.G. § 2K2.1(b)(6)(B)*

*Reliability of Evidence.* At sentencing, the government introduced video footage of Rucker telling an officer that Grady had pistol-whipped her a couple of weeks before the officer's interview with her. Grady complains that Rucker's statement was unreliable because it lacked temporal specificity, corroboration, or detail, and that Rucker did not testify at the hearing. And to the extent the district court relied on Grady's prior domestic violence and/or assault convictions to bolster Rucker's account, Grady asserts that doing so boiled down to reliance on propensity evidence. He insists that his own sworn testimony denying the allegation should have carried greater weight, since it was uncontested and subject to cross-examination.

The district court could rely on Rucker's statement so long as it bore "some minimal indicia of reliability." *United States v. Hamad*, 495 F.3d 241, 247 (6th Cir. 2007) (quoting *United States v. Silverman*, 976 F.2d 1502, 1512 (6th Cir. 1992) (en banc)). Indeed, "[a] sentencing court may consider all relevant evidence, whether or not such evidence would be admissible at trial." *United States v. Rice*, 844 F. App'x 844, 846 (6th Cir. 2021) (quoting *United States v. Mukes*, 980 F.3d 526, 534 (6th Cir. 2020)). The minimal-indicia-of-reliability requirement is a "relatively low hurdle." *United States v. Whitlow*, 134 F.4th 914, 927 (6th Cir. 2025) (citation omitted). Courts can make certain that this hurdle has been cleared by "assur[ing] themselves of sufficient corroborative evidence." *United States v. Santana*, 723 F. App'x 331, 342 (6th Cir. 2018); *see*

*also* U.S.S.G. § 6A1.3 cmt. (2021). And the district court did so here in assessing Rucker's statement.

Rucker gave her statement to law enforcement during a structured lethality interview. She had previously pointed police to the specific location of the firearm, and police corroborated the accuracy of this information when they recovered the weapon exactly where Rucker said it would be. Moreover, Rucker told officers about Grady's history of violent conduct toward her. Evidence of Grady's violence toward Rucker came not just from her statement about the earlier pistol whipping, but also from her appearance as she spoke with police on the day of the arrest. The video footage of the interview, which the government played for the court at sentencing, revealed fresh marks and bruises on Rucker's face and body that corroborated her statement to police that Grady had assaulted her the previous evening. And while those details do not speak to the pistol whipping, they add to the picture of Grady's history of violence toward Rucker, which the district court could readily consider in weighing Rucker's overall credibility. So the district court did not clearly err in finding that the pistol whipping occurred as Rucker described. The same is true for the proof of Grady's prior convictions involving violence against Rucker, which were uncontested and well documented in the PSR.

Faced with competing narratives—Rucker's contemporaneous statement versus Grady's blanket denial at sentencing—the district court resolved the credibility dispute in Rucker's favor, albeit "ever so slightly." (R. 50, Sentencing Tr., PageID 151). That finding, grounded as it is in the record, is entitled to deference. *See United States v. Abdalla*, 972 F.3d 838, 851 (6th Cir. 2020) (reaffirming that "district courts receive even greater deference when their findings are based on determinations regarding the credibility of witnesses" (citing *Anderson v. City of Bessemer*, 470 U.S. 564, 575 (1985) (citation modified))).

*Relevant Conduct.*   Grady next argues that even if the pistol-whipping occurred, the government failed to show that it qualified as relevant conduct under § 1B1.3 as directed by U.S.S.G § 2K2.1(b)(6)(B) cmt. n.14(E).  "A prior incident counts as relevant conduct if it was 'part of the same course of conduct' or a 'common scheme or plan' as the underlying conviction." *United States v. Webb*, 2021 WL 4806517, \*1 (6th Cir. Oct. 21, 2021) (quoting U.S.S.G. § 1B1.3(a)(2)).  If two offenses are not part of a common scheme or plan, the enhancement can still apply if they are closely related enough to be treated as "part of a single episode, spree, or ongoing series of offenses."  U.S.S.G. § 1B1.3 cmt. n.5(B)(ii) (2021).  Three factors bear on this inquiry: (1) "the degree of similarity of the offenses"; (2) "the regularity of the offenses"; and (3) "the time interval between the offenses."  *United States v. Phillips*, 516 F.3d 479, 483 (6th Cir. 2008).  We apply a "sliding scale" approach to these factors.  *Id.*

Grady emphasizes that the court referenced only the time interval between the two incidents—"a few weeks apart"—but did not explicitly address the similarity or regularity of the conduct.  (R. 50, Sentencing Tr., PageID 153).  Although the court's discussion of this issue was brief, we are not persuaded that its reasoning was insufficient.  To begin, the record reflects that the events were close in time, occurred in the same residence, involved the same individuals, and included a handgun that was either identical or substantially similar.  While regularity may be less clear, on the sliding scale we apply, strong similarity and close timing can compensate.  *See United States v. Bowens*, 938 F.3d 790, 800 (6th Cir. 2019).

The district court had sufficient grounds to conclude that the incidents formed part of an "ongoing series."  U.S.S.G. § 1B1.3 cmt. n.5(B)(ii) (2021).  For instance, both incidents occurred within a short time frame—just a "couple" of weeks apart according to Rucker—and involved the same individuals, the same household, and what the district court reasonably inferred to be the

same firearm. *See Webb*, 2021 WL 4806517, at *2 (quoting *United States v. Henry*, 819 F.3d 856, 865 (6th Cir. 2016)) ("When two incidents 'took place at the same location,' that usually shows they are 'connected.'"). Moreover, Rucker's use of the definite article—"the gun"—when describing the firearm Grady used to pistol-whip her supports the inference that only one gun was involved. Police recovered that gun in the precise location Rucker described, which further supports the conclusion that Grady had possessed the firearm continuously across both incidents. This was enough to satisfy § 1B1.3. For these reasons, we see no procedural error in the court's application of § 2K2.1(b)(6)(B).

### 2. *Consideration of Lower Sentence*

Grady next argues that the district court failed to consider several nonfrivolous arguments he advanced for a lower sentence, including his untreated post-traumatic stress disorder ("PTSD"), his exposure to violence and abuse during childhood, and the allegedly nonviolent nature of his firearm possession. Because Grady did not object to the district court's explanation at sentencing—despite being asked the *Bostic* question, so named for *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004)—we review this aspect of his appellate challenge for plain error. *See United States v. Ralston*, 110 F.4th 909, 919–20 (6th Cir. 2024). To establish plain error, Grady "must show the district court committed (1) an error that was (2) plain and (3) affected his substantial rights. If he can satisfy those three threshold requirements, then we have discretion to grant relief only if (4) we conclude that the error had a serious effect on the fairness, integrity or public reputation of judicial proceedings." *United States v. Golson*, 95 F.4th 456, 462 (6th Cir. 2024) (citation modified).

Grady cannot meet this demanding standard. The district court acknowledged multiple times that it considered his childhood trauma and drug abuse in mitigation. For instance, it stated

that "a very difficult childhood" and "a history of drug abuse" were "part of [his] story," and cited those factors in rejecting the government's request for a higher sentence. (R. 50, Sentencing Tr., PageID 167). The court also explicitly grounded its decision to impose a sentence at the bottom of the Guidelines range in those same mitigation arguments.

To the extent the district court did not specifically mention every detail Grady wished it to discuss, that omission does not establish reversible error, because a court need not recite every § 3553(a) factor or address each argument head-on. *See Rita v. United States*, 551 U.S. 338, 356–59 (2007). What matters is "whether the record makes clear that the sentencing judge listened to each argument, considered the supporting evidence, was fully aware of the defendant's circumstances and took them into account in sentencing him." *United States v. Vonner*, 516 F.3d 382, 387 (6th Cir. 2008) (en banc) (citing *Rita*, 551 U.S. at 358) (internal quotation marks omitted). That is the case here.

## B. Substantive Reasonableness

Grady maintains that his 84-month sentence is substantively unreasonable due to his mitigating history and characteristics. Again, we review claims of substantive unreasonableness for an abuse of discretion. *Gall*, 552 U.S. at 40–41. To be substantively reasonable, a sentence "must be proportionate to the seriousness of the circumstances of the offense and offender, and sufficient but not greater than necessary, to comply with the purposes of § 3553(a)." *United States v. Vowell*, 516 F.3d 503, 512 (6th Cir. 2008) (citations and quotation marks omitted). On appellate review, we may presume the reasonableness of a within-Guidelines sentence, *see Perez-Rodriguez*, 960 F.3d at 754, but even with presumptive reasonableness, we must inquire as to whether the district court "placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). Yet,

rebutting the presumption is "no small burden," and we generally do not "second guess" sentences on substantive grounds when they fall within the Guidelines. *United States v. Simmons*, 587 F.3d 348, 365 (6th Cir. 2009) (citation omitted). Grady has not met his burden to rebut the presumption of reasonableness for his within-Guidelines sentence. The record shows that the district court thoroughly and appropriately weighed the § 3553(a) factors before imposing the sentence.

To start, the district court gave due weight to the nature and circumstances of the offense. *See* 18 U.S.C. § 3553(a)(1). Although Grady accurately notes that he was not brandishing the firearm at the time of his arrest, the court emphasized that he possessed the weapon "after having multiple violent convictions" and while "engaging in criminal conduct." (R. 50, Sentencing Tr., PageID 167). As to Grady's history and characteristics, the court acknowledged his "very difficult childhood," his "experiences that no child should have to encounter," and his "history of drug abuse." (*Id.*). But it also considered that Grady had recently served time for an attempted aggravated robbery in which he had discharged a firearm; he had incurred "multiple probation and parole violations"; and he had amassed "multiple convictions for violent acts, including using a firearm." (*Id.*). Further, at the time of this offense, Grady had been out of prison for less than two years. Then, in discussing the need for the sentence to promote respect for the law and to provide just punishment, it noted that Grady's swift return to firearm possession reflected little regard for the law. *See* 18 U.S.C. § 3553(a)(2)(A). And Grady's "violent criminal history" made protecting the public from further crimes "a very important factor." (R. 50, Sentencing Tr., PageID 168). Finally, the district court's statement that this case was not outside the "mine-run" of firearm possession cases reflected a correct understanding of its role in avoiding unwarranted sentencing disparities. (*Id.*, PageID 169). It placed Grady's conduct within the mainstream of similarly situated defendants, reinforcing the appropriateness of a Guidelines sentence. *See Perez-*

*Rodriguez*, 960 F.3d at 754. All in all, these facts, the court concluded, diminished the weight of his mitigation claims.

Grady's remaining objections ask this Court to reweigh the § 3553(a) factors in his favor. But a defendant's dissatisfaction with the district court's weighing of the sentencing factors does not render a sentence unreasonable. *United States v. Trejo–Martinez*, 481 F.3d 409, 413 (6th Cir. 2007). The district court articulated a reasonable basis for its decision, grounded in the facts of this case and consistent with governing law. That is all the law requires, thus we find no abuse of discretion.

**III.**

We AFFIRM.