NOT RECOMMENDED FOR PUBLICATION
File Name: 25a0404n.06

No. 24-5895

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Aug 19, 2025
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT |
| v. | ) ) | COURT FOR THE EASTERN DISTRICT OF KENTUCKY |
| RICHARD JACKSON, | ) ) | |
| Defendant-Appellant. | ) ) ) | OPINION |

Before: SUTTON, Chief Judge; CLAY and THAPAR, Circuit Judges.

**CLAY, Circuit Judge.** Defendant Richard Jackson pleaded guilty to one count of conspiracy to distribute fifty grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846. After applying a two-level Sentencing Guidelines enhancement for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1), the district court sentenced Jackson to 128 months in prison and five years of supervised release. Jackson argues on appeal that the district court committed a reversible error by applying the § 2D1.1(b)(1) enhancement to his sentence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

On January 30, 2024, Jackson and Terrance Wallace traveled together by car from Dayton, Ohio to a parking lot in Nicholasville, Kentucky, where they sold approximately 223 grams of a mixture containing methamphetamine for $1,400 to an individual acting as a confidential informant for local law enforcement officers. Following their return to Ohio, Jackson and Wallace

travelled to the Nicholasville parking lot again the next day to sell more methamphetamine to the confidential informant. After arriving at the parking lot, local authorities approached their car and ordered Jackson and Wallace to exit. Instead of exiting the car, Wallace drove away with Jackson still in the front passenger seat. Officers then deployed stop sticks, which slowly deflated the car's tires after making contact. Undeterred, Wallace continued to drive with the flat tires until the car came to a stop a short distance from the parking lot. During the attempted escape, Jackson tossed methamphetamine from the car's passenger window. Officers eventually recovered approximately 370 grams of a mixture containing methamphetamine from the surrounding roadway. Officers also retrieved a nine-caliber pistol from the car, where it was resting against the gearshift near the car's center console. Wallace later admitted to owning the pistol.

A grand jury in the Eastern District of Kentucky subsequently returned an indictment charging Jackson and Wallace each with one count of conspiracy to distribute fifty grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 846, and one count of knowingly and intentionally possessing fifty grams or more of a mixture or substance containing methamphetamine with the intent to distribute, in violation of 21 U.S.C. § 841(a). Wallace was also charged with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. § 924(c)(1)(A).

After entering into a plea agreement with the government, Jackson pleaded guilty to the charge of conspiracy to distribute methamphetamine. In a presentence investigation report, the probation department calculated a sentencing range for Jackson of 135–168 months' imprisonment based upon a total offense level of 31 and a criminal history category of III. In calculating Jackson's advisory Sentencing Guidelines range, the probation department applied a two-level enhancement for the possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1).

Jackson objected to the enhancement, arguing in a sentencing memorandum filed with the district court that the pistol belonged to Wallace and there was no evidence that Jackson knew that the pistol was in the car or intended to use the gun in furtherance of any drug trafficking activity. In contrast, the government urged the district court to apply the enhancement, contending that the pistol's presence in the car was reasonably foreseeable to Jackson given the amount of methamphetamine he and Wallace were selling, their travel to an unfamiliar location, and the location of the pistol within the car.

Before sentencing Jackson, the district court held an evidentiary hearing on September 27, 2024. During the hearing, the government presented testimony from Sergeant Colby Warren of the Nicholasville Police Department and a video recording of Jackson and Wallace's arrest. Warren testified that he was present during the arrest and detailed what he observed at the time of the arrest and immediately thereafter. Warren stated that after Jackson and Wallace were taken into custody, he noticed a gun "[n]ear the gear shift of the center console area of the car." Evidentiary Hr'g Tr., R. 80, Page ID #328. Warren testified that Wallace had claimed ownership of the recovered gun and told officers that he had "unloaded the firearm and placed it onto the center console area." *Id.* During a colloquy with Jackson's attorney, Warren further explained his understanding of Wallace's gun-related statement to the officers:

> Q: Were you present during that conversation with Wallace when he was talking about that gun?
>
> A: I was not.
>
> Q: Did [Wallace] mention when in proximity to his stop did he place the gun on the center console?
>
> A: I do not have that knowledge. I don't recall.

Q: I'll just ask direct. Did Wallace say, Hey, when I got stopped, I pulled out the gun, unloaded it, placed it on the center console?

A: Yes. I'm sorry. Detective Courtney advised me when speaking to Wallace, Wallace had stated, upon initial contact from law enforcement, he unloaded the gun and placed it on the center console.

Q: I see. So he had possession of it or, I guess, to be more accurate for the Court, the—I guess the vehicle stopped?

A: Yes.

Q: Pulls the gun out, off his person, unloads it, placed it on the center console. Is that a fair statement?

A: That's what I was told.

Q: Okay. And, again, Mr. Wallace admitted that it was his gun; and he made no mention that [Jackson] had any possession of the gun itself?

A: That's what I was advised, yes.

*Id.* at Page ID #337–38. In a later colloquy with the district court, Warren noted that the confidential informant who interacted with Jackson and Wallace on January 30, 2024, did not observe a firearm during that interaction and officers were unaware of whether either Jackson or Wallace brought a firearm with them to the drug sale on that date. Warren also clarified that he was unaware of whether, on January 31, 2024, before his arrest, Wallace carried the pistol on his person or retrieved the pistol from somewhere in the car before unloading it and placing it on the car's center console.

At the conclusion of the evidentiary hearing, the district court rejected Jackson's objection to the § 2D1.1(b)(1) sentencing enhancement for possession of a firearm.[1] The district court

---

[1] The district court also sustained a separate objection by Jackson to a Sentencing Guidelines enhancement for reckless endangerment during flight pursuant to U.S.S.G. § 3C1.2. The government did not appeal this ruling, and we therefore do not consider it on appeal.

explained that it was "reasonable to conclude," given that Jackson and Wallace twice made "a lengthy drive[] to sell substantial quantities of controlled substances in an area where they were not familiar . . . that one individual would possess a firearm." *Id.* at Page ID #376–77. With respect to Jackson's arguments that the enhancement should not apply because he lacked both actual and constructive possession of the firearm, the district court determined "that, considering all relevant conduct in the case and the actions of a co-conspirator, that that is reasonably foreseeable and it is attributable to the defendant." *Id.* at Page ID #377.

The district court subsequently calculated a Sentencing Guidelines range for Jackson of 108 to 135 months of imprisonment, which incorporated the two-level increase pursuant to § 2D1.1(b)(1). Had the district court declined to apply the § 2D1.1(b)(1) enhancement, Jackson's advisory Sentencing Guidelines range would have been 87 to 108 months of imprisonment. The district court ultimately sentenced Jackson to 128 months in prison and five years of supervised release. Jackson filed a timely notice of appeal on October 2, 2024.

## II. DISCUSSION

Jackson argues on appeal that the district court erred by applying the § 2D1.1(b)(1) sentencing enhancement because the government did not meet its burden during the evidentiary hearing to put forth evidence sufficient to impose the enhancement.

### A. Standard of Review

In assessing the district court's application of the § 2D1.1(b)(1) enhancement, we review the district court's factual findings for clear error, *United States v. Iossifov*, 45 F.4th 899, 922 (6th Cir. 2022), and its interpretation of the Sentencing Guidelines de novo, *United States v. Gould*, 30 F.4th 538, 542 (6th Cir. 2022). Because the district court's application of the § 2D1.1(b)(1) enhancement necessarily required it to apply the Sentencing Guidelines to facts, different standards

of review apply to the district court's determinations and findings with respect to the various elements of the § 2D1.1(b)(1) enhancement. *United States v. Brown*, 131 F.4th 337, 344 (6th Cir. 2025). As relevant to this appeal, we review the district court's determination of whether the dangerous weapon's presence was reasonably foreseeable for clear error. *United States v. Donadeo*, 910 F.3d 886, 893 (6th Cir. 2018). To find that the district court clearly erred, we must be left with the "definite and firm conviction that a mistake has been committed." *United States v. Castano*, 906 F.3d 458, 467 (6th Cir. 2018) (quoting *Easley v. Cromartie*, 532 U.S. 234, 242 (2001)).

## B. Analysis

To "reflect[] the increased danger of violence when drug traffickers possess weapons," § 2D1.1(b)(1) provides a two-level enhancement for defendants who possess dangerous weapons such as firearms while committing drug offenses. U.S.S.G. § 2D1.1 cmt. n.11(A). The enhancement can only "appl[y] when the government establishes by a preponderance of the evidence that (1) the defendant actually or constructively possessed the dangerous weapon (2) during the offense." *United States v. Mosley*, 53 F.4th 947, 966 (6th Cir. 2022). In the context of criminal conspiracies, the government may establish these elements by imputing the gun possession of one coconspirator to another coconspirator. *United States v. Barron*, 940 F.3d 903, 911–12 (6th Cir. 2019). To do so, "the government must establish that the dangerous weapon possession was within the scope of the jointly undertaken criminal activity; in furtherance of that criminal activity; and reasonably foreseeable in connection with that criminal activity." *Brown*, 131 F.4th at 344. Just as it must for individual defendants, "[t]he government must prove these elements by a preponderance of the evidence." *United States v. McCloud*, 935 F.3d 527, 531 (6th Cir. 2019). "Once that burden is met, the enhancement applies unless the defendant can present

evidence to show that it was clearly improbable that the weapon was connected to the offense." *United States v. Pryor*, 842 F.3d 441, 453 (6th Cir. 2016) (internal quotation marks omitted).

Jackson does not argue on appeal that the pistol at issue in this case was unconnected to the drug conspiracy to which he pled guilty. Nor does he argue that Wallace, his coconspirator, did not possess the pistol during the pendency of their methamphetamine trafficking conspiracy. Instead, Jackson argues that we should remand for resentencing with instructions to the district court not to impose the § 2D1.1(b)(1) enhancement because, in his view, the government failed to prove that he knew a firearm would be present during the conspiracy. This argument concerns the sufficiency of the government's showing that the pistol's presence was "reasonably foreseeable" in connection with the conspiracy offense. Jackson contends that the government did not establish the requisite reasonable foreseeability because it did not put forth objective evidence such as a bulletproof vest which could point to a degree of dangerousness during the conspiracy or witness testimony indicating his knowledge of the pistol or encouraging the use of a firearm during the conspiracy. Despite these contentions, we find no clear error in the district court's decision to apply the § 2D1.1(b)(1) enhancement in the instant case.

As an initial matter, we need not pass upon every rationale that the district court used to apply the § 2D1.1(b)(1) enhancement to Jackson's sentence. For example, the district court found it probative that Jackson and Wallace were selling "substantial quantities of controlled substances." Evidentiary Hr'g Tr., R. 80, Page ID #376–77. In past cases reviewing the applicability of the § 2D1.1(b)(1) enhancement, we have often inferred criminal defendants' understanding that guns are reasonably foreseeable in a given drug trafficking conspiracy when large amounts of illicit narcotics were involved in the underlying drug conspiracy. *See United States v. Woods*, 604 F.3d 286, 291 (6th Cir. 2010) (collecting cases); *United States v. Wade*, 318

F.3d 698, 702 (6th Cir. 2003) (same). However, we may affirm the district court's judgment on any basis supported by the record below. *Angel v. Kentucky*, 314 F.3d 262, 264 (6th Cir. 2002). In exercising that discretion in the case at hand, it is unnecessary for us to determine whether the district court correctly considered the quantity of methamphetamine in Jackson and Wallace's drug conspiracy sufficient to establish the reasonable foreseeability of the pistol during the conspiracy for purposes of the § 2D1.1(b)(1) enhancement.

Instead, we affirm and find no clear error in the district court's application of the § 2D1.1(b)(1) enhancement on the basis of Jackson's presence inside a vehicle used to traffic methamphetamine with a pistol in plain view at the time of his arrest on January 31, 2024. While "the proximity of [a] firearm alone does not determine the propriety of the enhancement," *United States v. Martin*, 71 F. App'x 448, 454 (6th Cir. 2003), "the proximity of the firearm to the drugs" at issue is still a relevant factor in our § 2D1.1(b)(1) analysis, *United States v. Cobbs*, 233 F. App'x 524, 543 (6th Cir. 2007). Here, Jackson was arrested in a car containing methamphetamine where a pistol was recovered in plain view. Still, as Jackson correctly notes, the possession of the pistol may not be attributed to him simply because he participated in a methamphetamine trafficking conspiracy. "Rather, at a minimum, we require that there be objective evidence that the defendant knew the weapon was present, or at least knew it was reasonably probable that his coconspirator would be armed." *United States v. Cochran*, 14 F.3d 1128, 1133 (6th Cir. 1994). We have previously noted that "objective evidence that [a] defendant otherwise expected a firearm to be present" during a drug trafficking conspiracy includes "being arrested in a room with a firearm in plain view." *Woods*, 604 F.3d at 292. In *United States v. Dudeck*, for example, we explained that the § 2D1.1(b)(1) enhancement could be properly applied to a defendant who had access to a room containing a coconspirator's gun in plain view where drugs were also stored. 1 F. App'x 413, 417

(6th Cir. 2001). Similarly, in *United States v. Catalan*, we upheld an application of the § 2D1.1(b)(1) enhancement to a defendant who "was arrested in the room where the gun was located." 499 F.3d 604, 607 (6th Cir. 2007). Given Jackson's arrest in a vehicle where a pistol was contemporaneously found in plain view and our previous invocations and applications of this plain view consideration, we cannot say that the district court clearly erred by applying the § 2D1.1(b)(1) enhancement to Jackson's sentence.

The pistol's location within the car prior to Wallace placing it in plain view does not alter our determination in this regard. Outside of the conspiracy context, we have upheld a district court's determination of firearm possession for § 2D1.1(b)(1) purposes where the defendant was seated in the backseat of a vehicle and the firearm was located underneath the front passenger seat. *See United States v. West*, 962 F.3d 183, 189 (6th Cir. 2020). Jackson's knowledge of the pistol's whereabouts within the car prior to its reveal by Wallace is of no issue in the present case, however, because "reasonable foreseeability is an objective test" which does not require Jackson to "have actually known about the weapon." *Catalan*, 499 F.3d at 607. As explained above, the circumstances of Jackson's arrest presented the district court with sufficient evidence that the presence of the pistol in connection with Jackson and Wallace's conspiracy to distribute methamphetamine was reasonably foreseeable to a coconspirator in Jackson's position. Jackson has not put forth any evidence suggesting that it is clearly improbable that the pistol was connected to the drug conspiracy offense to which he pleaded guilty.

## III. CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.